[No. D026633. Fourth Dist., Div. One. July 25, 1997.]

CALIFORNIA ALLIANCE FOR UTILITY SAFETY AND EDUCATION,
et al., Plaintiffs and Appellants, v.
CITY OF SAN DIEGO et al., Defendants and Respondents.

**COUNSEL**

Charles Wolfinger for Plaintiffs and Appellants.

John W. Witt, City Attorney, and Deborah L. Berger, Deputy City Attorney, for Defendants and Respondents.

**OPINION**

**BENKE, Acting P. J.**—In this case a city and its city council contend that a citizens group's claim for declaratory relief under the open meeting provisions of the Ralph M. Brown Act (Brown Act) (Gov. Code,[1] § 54960, subd. (a)) and public meeting requirements of the city charter are not ripe because the group has only alleged the occurrence of a past violation. We reject this narrow interpretation of the remedies available under the Brown Act and charter and reverse the judgment entered upon an order sustaining city's demurrer.

I

FACTUAL AND PROCEDURAL SUMMARY

In 1970 defendants and respondents City of San Diego and City Council of City of San Diego (collectively city) granted San Diego Gas & Electric Company (SDG&E) a 50-year franchise to provide electricity to city residents. SDG&E agreed to pay city certain fees and to provide other benefits to city. One of the benefits SDG&E is obligated to provide under the franchise agreement is an annual level of spending devoted to placing overhead power lines underground. This obligation is consistent with a policy of undergrounding utility lines adopted by state Public Utilities Commission in 1970.

In particular, the franchise agreement requires that SDG&E budget 4.5 percent of its total electric revenue from city residents multiplied by a

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

specified allocation formula. However, the franchise agreement also permits SDG&E to explain to city why it would not be economically wise to spend the amount required by the formula in any given year.

In 1986 SDG&E and city were engaged in inverse condemnation litigation. The city council discussed the 1986 litigation in closed session with its attorneys and agreed to reduce SDG&E's undergrounding obligation for the years 1990 through 1994 as part of a settlement of the litigation.

In 1995 the city council was contemplating litigation against SDG&E with respect to city's rights under the franchise agreement. The city council posted an agenda item for a closed session on March 28, 1995, which stated: "Conference with Legal Counsel—anticipated litigation—significant exposure to litigation, pursuant to California Government Code Section 54956.9(b): [¶] a. City v. SDG&E." The council in fact met in closed session on March 28, 1995, and decided to reduce SDG&E's undergrounding obligation by a total of $169 million for the years 1994 through 2000. In return SDG&E agreed to pay city an additional $3.4 million in franchise fees. The city council set the settlement agreement for public approval on its April 10, 1995, agenda.

In the docket of its agenda for April 10, 1995, the city council listed 25 items as consent matters, including item 114 which stated: "Authorizing an Additional $40,000 to Retain Outside Counsel For the Litigation of the City of San Diego v. San Diego Gas & Electric Company. CITY MANAGER'S RECOMMENDATION: Adopt the resolution." The full agenda the city council posted for item 114 listed four topics: retaining counsel, setting a $40,000 budget for counsel fees, approving a settlement agreement and authorizing payment of counsel fees.[2] The settlement agreement was approved without any public discussion by the city council at its April 10, 1995, meeting and executed by city on April 11, 1995.

On February 5, 1996, plaintiffs and appellants, three residents of San Diego and the California Alliance for Utility Safety and Education (collectively CAUSE), filed a complaint against city which alleges two causes of

---

[2]The agenda contained the following description of the resolution the council would be considering: "Authorizing the retention of Alvarado, Smith, Wolff & Sanchez and Baker & McKenzie to handle the litigation of the City of San Diego vs. San Diego Gas & Electric Company;

"Authorizing the expenditure of an additional $40,000 for outside attorney fees and costs;

"Authorizing a Settlement Agreement with San Diego Gas & Electric Company concerning surcharge franchise fees, underground allocations and expenditures and franchise fees on transportation revenues;

"Authorizing the Auditor and Comptroller to set aside and expend a total amount not to exceed $40,000."

action. In its first cause of action, CAUSE alleges the city council is engaged in four continuing violations of the Brown Act when it makes decisions with respect to SDG&E's obligation to bury power lines. CAUSE alleges the city council has adopted a practice of: (1) holding closed sessions on the pretext of pending litigation; (2) giving no public notice of the facts and circumstances justifying closed sessions; (3) holding improper discussions in closed session on subjects unrelated to any pending litigation; and (4) posting misleading agendas for open meetings to ratify closed session decisions on undergrounding. CAUSE's complaint seeks declaration that such practices violate the Brown Act and injunctive relief preventing them from recurring.

CAUSE's second cause of action alleges a continuing violation of section 103 of the city charter which requires that the city council hold public meetings when granting or amending a franchise agreement. CAUSE seeks a declaration the city council violated the charter and an injunction preventing future violations.

City filed a demurrer, alleging the complaint failed to state a cause of action. The trial court sustained city's demurrer without leave to amend and entered judgment in favor of city. CAUSE filed a timely notice of appeal.

ISSUES ON APPEAL

As it did in the trial court, city contends that any claims with respect to a future violation of the Brown Act or the city charter are not ripe.[3]

DISCUSSION

I

"When reviewing the sufficiency of a complaint against a demurrer, we assume the truth of all properly pled material facts and consider those matters which may be judicially noticed [citation], and we report them accordingly." (*Alameda County Land Use Assn.* v. *City of Hayward* (1995) 38 Cal.App.4th 1716, 1719 [45 Cal.Rptr.2d 752].) "If those facts reveal an actual controversy exists between the parties, the complaint is legally sufficient for declaratory relief." (*Id.* at p. 1722.)

---

[3]Although city asserted in the trial court that CAUSE's failure to meet the exhaustion requirements of section 54960.1 barred relief, it has not reasserted this argument on appeal. Although we do not decide the issue, we note the exhaustion requirements were added to the Brown Act as part of the nullification remedy the Legislature created in 1986 and on their face appear to apply only to nullification claims. (See § 54960.1, subd. (b); Stats. 1986, ch. 641, § 9, pp. 2159-2160.)

## II

■ "The ripeness requirement, a branch of the doctrine of justiciability, prevents courts from issuing purely advisory opinions. . . . [T]he ripeness doctrine is primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy. On the other hand, the requirement should not prevent courts from resolving concrete disputes if the consequences of a deferred decision will be lingering uncertainty in the law, especially when there is widespread public interest in the answer to a particular legal question." (*Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 170 [188 Cal.Rptr. 104, 655 P.2d 306].) "The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." (*Abbott Laboratories* v. *Gardner* (1967) 387 U.S. 136, 148-149 [87 S.Ct. 1507, 1515, 18 L.Ed.2d 681]; accord, *Pacific Legal Foundation* v. *California Coastal Com., supra,* 33 Cal.3d at p. 171.)

■ Contrary to city's argument, the ripeness doctrine does not require that to obtain declaratory relief CAUSE allege and prove a pattern or practice of past violations. Rather, it is sufficient to allege there is a controversy over whether a past violation of law has occurred. (*Alameda County Land Use Assn.* v. *City of Hayward, supra,* 38 Cal.App.4th at p. 1723.) In *Alameda County Land Use Assn.* v. *City of Hayward,* a group of local municipal governments entered into a memorandum of understanding (MOU) which restricted their power to amend their separate general plans with respect to a particular area over which each municipal government shared planning jurisdiction. A group of landowners whose property was within the area subject to the MOU challenged the validity of the MOU by way of a declaratory relief action. The municipalities argued that no controversy would exist until the property owners had applied for and been denied a land use permit. The Court of Appeal rejected this argument, stating: "An action for declaratory relief lies when the parties are in fundamental disagreement over the construction of particular legislation, *or they dispute whether a public entity has engaged in conduct* or established policies *in violation of applicable law.* [Citations.]" (*Alameda County Land Use Assn.* v. *City of Hayward, supra,* 38 Cal.App.4th at p. 1723, italics added; see also *Californians for Native Salmon etc. Assn.* v. *Department of Forestry* (1990) 221 Cal.App.3d 1419, 1427 [271 Cal.Rptr. 270].)

Here, there can be no doubt there is a controversy between the parties over whether in reducing SDG&E's undergrounding obligation for the years 1994

through 2000, the city council met the requirements of the Brown Act and the city charter. For their part the plaintiffs believe the city council did not properly give notice of the closed session it conducted on March 28, 1995, used the closed session to discuss issues other than receiving advice from its attorneys and failed to properly give notice of the public session in which the settlement agreement with SDG&E was formally approved and failed to conduct the public hearing they believe is required by the city charter.

Notwithstanding its demurrer, for its part city does not believe any violation has occurred. City's belief as to the propriety of its action may be found not only in plaintiffs' allegation that city will engage in similar practices in the future but also in city's failure to concede that the facts alleged by plaintiffs constitute a violation of the Brown Act or the city charter. (See *Common Cause* v. *Stirling* (1983) 147 Cal.App.3d 518, 524 [195 Cal.Rptr. 163] [courts may presume that municipality will continue similar practices in light of city attorney's refusal to admit violation].) Thus there can be no serious dispute that a controversy between the parties exists over city's past compliance with the Brown Act and the charter. On that basis alone plaintiffs are entitled to declaratory relief resolving the controversy. (*Alameda County Land Use Assn.* v. *City of Hayward, supra,* 38 Cal.App.4th at p. 1723.)

Although the public importance of an issue is not controlling (see *Californians for Native Salmon etc. Assn.* v. *Department of Forestry, supra,* 221 Cal.App.3d at p. 1430), we must also recognize that contrary to city's argument, the public interest in resolving this controversy is substantial. In the most general sense the controversy is over a long-term contract with the provider of a vital public service and involves literally hundreds of millions of dollars in potential infrastructure improvements over the next 23 years. More particularly, the controversy alleged by plaintiffs involves the important balance which the Brown Act attempts to draw between the requirement that public business be conducted in public and the practical need public agencies have for confidentiality when attempting to make rational decisions about the legal strength of arguments asserted by an actual or probable adversary. (See § 54956.9; *Sutter Sensible Planning, Inc.* v. *Board of Supervisors* (1981) 122 Cal.App.3d 813, 824-825 [176 Cal.Rptr. 342].) The Brown Act attempts to draw that balance by, among other devices, requiring disclosure to the public of facts and circumstances which show that a public discussion of a particular matter is prejudicial to the agency's interests. (§ 54956.9, subd. (b)(3)(B); *Closed City Council Sessions Authorized,* 69 Ops.Cal.Atty.Gen. 232, 238 (1986).) Resolution of what notice is required with respect to disputes with SDG&E which may arise during the life of the

franchise agreement will protect not only the public's ability to monitor the activities of its public officials but it will also clarify for city officials the manner in which they may proceed in protecting city's legitimate interests under the franchise agreement.

Not only is the controversy alleged by plaintiffs a matter of some importance, the allegations of the complaint also strongly suggest that in the absence of declaratory relief plaintiffs will have some difficulty in preventing future violations. (See *Abbott Laboratories* v. *Gardner*, *supra*, 387 U.S. at p. 149 [87 S.Ct. at pp. 1515-1516].) In this regard we note that even after the closed session had occurred and the city council had determined that it would adopt the proposed settlement, the agenda materials prepared by city failed to fully disclose the nature and scope of the settlement being considered by city. Indeed, at the time the settlement was being considered for public adoption by the council, more information about the cost of outside counsel was provided to the public than information about the settlement. The difficulty plaintiffs had in discovering the 1995 settlement suggests that in the absence of declaratory relief there is some risk that any future settlement with respect to SDG&E's undergrounding obligation will also go undetected by interested members of the public.

In sum then the complaint alleges the existence of an actual controversy between the parties for which declaratory relief is available. Accordingly, the judgment is reversed. Appellants to recover their costs of appeal.

Huffman, J., and McDonald, J., concurred.

On August 22, 1997, the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied October 29, 1997.