[No. H018406. Sixth Dist. Sept. 17, 1999.]

CANDACE INGRAM, Plaintiff and Appellant, v.
DEAN FLIPPO, as District Attorney, etc., et al., Defendants and Respondents.

COUNSEL

Law Offices of Michael W. Stamp, Michael W. Stamp and Jeanine G. Strong for Plaintiff and Appellant.

Douglas C. Holland, County Counsel, and William K. Rentz, Deputy County Counsel, for Defendants and Respondents.

OPINION

**BAMATTRE-MANOUKIAN, J.**—Candace Ingram, a member of a local school board, filed suit against Dean Flippo, the District Attorney of Monterey County (the District Attorney), and Monterey County (the County), seeking declaratory and injunctive relief under California's "Open Meeting Law," the Ralph M. Brown Act (hereafter the Brown Act, or the Act). (Gov. Code, § 54950 et seq.)[1] The allegations of the complaint stemmed from statements made in a press release by the District Attorney that there had been minor violations of the Brown Act by several board members. Ingram disagreed with the District Attorney's conclusions and interpretation of the Brown Act. She sought a judicial declaration that she had not violated the Act and also sought an injunction to prevent the District Attorney from further interfering with her rights.

The trial court sustained a demurrer without leave to amend on grounds that the District Attorney and the County were protected by prosecutorial immunity (§ 821.6), that the statements made by the District Attorney were privileged (Civ. Code, § 47, subd. (a)), and that plaintiff had failed to state a cause of action under the Brown Act (§ 54960, subd. (a).).

We find that the Brown Act does not provide for declaratory or injunctive relief against these defendants under the circumstances of this case. We therefore find that the complaint does not state a cause of action under the Brown Act. We further find that the principles of prosecutorial immunity and privilege apply to bar any action against the District Attorney based on statements made in the course of official duties. We affirm the judgment.

*Standard of Review*

Because this is an appeal from a judgment entered upon the sustaining of a demurrer, we accept the properly pleaded allegations of the complaint as true and construe them liberally to determine whether it appears that the plaintiff is entitled to any relief against the defendants. (*CAMSI IV* v. *Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1530 [282 Cal.Rptr. 80]; *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032].) The function of a demurrer is to test the sufficiency of the complaint alone and not the evidence or other extrinsic matters. (See 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 899, 900, pp. 357, 358.) Since only legal issues are raised, our review is independent of the trial court's. (*Dawson* v. *East Side Union High School Dist.* (1994) 28 Cal.App.4th 998, 1025 [34 Cal.Rptr.2d 108].)

[1]All further statutory references are to the Government Code unless otherwise specified.

*The Complaint*

From 1981 to the present, plaintiff Candace Ingram has served as a volunteer member of the Board of Trustees (the Board) of the Pacific Grove Unified School District (the District). Pacific Grove is a small school district that has experienced budget problems for many years. In 1996 a new district superintendent was hired, following which the Board intensified efforts to address the ongoing financial, program and facilities problems facing the District. Concerns about reconfiguration of the school facilities and reduction in class sizes resulted in strongly divided opinions amongst parents and teachers and in the community at large.

At a regular Board meeting on February 6, 1997, Ingram and two other Board members were served with a "Notice of Intention to Circulate Recall Petition." Many of the same parents and teachers who opposed the reconfiguration and reduction in class size were part of this recall effort. Around this time a complaint was filed with the District Attorney alleging violations of the Brown Act by the Board and the district superintendent. In regard to this complaint, appellant alleged that it was filed "[a]s part of an overall strategy to defeat reconfiguration, and to create support for recall of the three Board members . . . ."[2]

On February 18, 1997, a media conference was held by the group supporting the recall. A representative from the District Attorney's office was present. At the media conference a declaration was circulated, signed by Board member Rod Herndon and witnessed by a parent and member of the recall group. The declaration alleged that Brown Act violations by Board members had occurred in connection with discussions regarding the issues of reconfiguration and reduction in class sizes.

On March 28, 1997, a letter and media release were distributed by the District Attorney's office, detailing the findings of an investigation of the alleged Brown Act violations. The letter concluded that "[t]here is no evidence of criminal intent or purpose on the part of any member of the Board to violate the Brown Act and, therefore, no criminal sanctions are warranted . . . ." It stated that the District Attorney would not institute a criminal prosecution and would not file a civil action under the Brown Act. The letter went on to conclude, however, that there had been "several less serious Brown Act violations by one or more members of the PGUSD Board

[2]Although appellant's complaint does not identify who filed the complaint with the District Attorney's office, a declaration by Assistant District Attorney Klar Wennerholm accompanying the demurrer indicates that Alfred Filipini and Debi Page, both members of the recall group, filed the complaint, with supporting documentation provided by Board member Rod Herndon.

of Trustees . . . ." These violations were further described as two alleged incidents occurring on October 3, 1996, and on or about November 21, 1996. The names of the Board members involved in these incidents were not mentioned. The District Attorney sought assurances that all of the Board members would henceforth comply with the Brown Act and he reserved the right, in the absence of such compliance, to file a civil suit to compel compliance. A copy of the District Attorney's letter was distributed in conjunction with efforts to obtain signatures for the recall of the three Board members.[3] The recall eventually failed.

On these pleaded facts, plaintiff stated two causes of action against the District Attorney and the County, for declaratory relief and for an injunction. She alleged that the District Attorney had no authority under the Brown Act to publicize or state conclusions that Board members had violated the Brown Act, without following the remedial provisions of the Act, namely filing a written demand to the Board to cure or correct any perceived problem and then filing a lawsuit seeking a court order within the requisite time periods. She alleged that the District Attorney's conclusions that some Board members had violated the Brown Act were inaccurate and erroneous and denied her the opportunity to have the essential issue whether any Brown Act violation had occurred decided by a court of law. The District Attorney refused to retract the letter and media release or to acknowledge that the conclusions stated therein, that the two "less serious" violations of the Brown Act had occurred, were inaccurate or erroneous.

Plaintiff alleged that an actual controversy existed in that she maintained that there had been no violations of the Brown Act whereas the District Attorney had published a statement that there had been such violations, without proceeding in accordance with the Act and with no adjudication of the essential issue. She alleged that she was entitled to a judicial declaration of the rights, responsibilities and obligations of the parties under the Brown Act.

In her second cause of action, plaintiff alleged that the letter and press release issued by the District Attorney threatened further action against her

[3]Although the March 28, 1997, letter and media release (which were substantially the same) were not attached to the complaint, the complaint excerpted quotes from the letter and summarized parts of it in some detail. The letter and media release were included in the papers supporting the demurrer, and at the hearing on the demurrer both sides referred to the letter and quoted from it. Since the contents of the letter and media release form the basis of the allegations in the complaint, it is essential that we evaluate the complaint by reference to these documents. Respondents have requested that we take judicial notice of the letter and media release under Evidence Code section 452, subdivision (h), and appellant has not opposed this. We therefore take judicial notice of the District Attorney's March 28, 1997, letter and press release and we attach them as appendices A and B to this opinion.

and other Board members based on the erroneous conclusion that they had violated the Act, and resulted in a chilling of her rights of free speech and association. She sought an injunction prohibiting the District Attorney from threatening further action or otherwise interfering with her rights as an elected official.

*The Demurrer*

Defendants filed a demurrer and a special motion to strike pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP [strategic lawsuit against public participation] statute). As grounds for the demurrer, defendants contended that the complaint failed to state a cause of action against them because they were protected by prosecutorial and discretionary immunity under sections 821.6 and 820.2, because the District Attorney's statements were absolutely privileged under Civil Code section 47, subdivision (a), and because no actual justiciable controversy existed. They contended further that the anti-SLAPP provisions of Code of Civil Procedure section 425.16 applied to government officials commenting on an official investigation and barred plaintiff's lawsuit.

In response, plaintiff argued that the District Attorney was not entitled to assert prosecutorial immunity because the letter and press release were issued after the District Attorney had decided not to prosecute and thus his conduct was not an integral part of the judicial process. Furthermore, the governmental immunities provided for in the California Tort Claims Act (§ 810 et seq.) applied only to shield government officials from liability and this was not an action for damages. As to the official duty privilege contained in Civil Code section 47, subdivision (a), she argued that this defense did not apply because the District Attorney was not *properly* discharging an official duty within the scope of his office when he issued the letter and press release. Finally, in response to the special motion to strike, plaintiff argued that an anti-SLAPP motion is inappropriate in a declaratory relief action seeking judicial interpretation of the Brown Act.

The court sustained the demurrer without leave to amend, finding: 1) that the District Attorney and the County were immune from suit on the basis of the immunity provided in section 821.6; 2) that the communication of the District Attorney was privileged under Civil Code section 47, subdivision (a); and 3) that the complaint failed to state a cause of action under section 54960, subdivision (a). In light of its decision sustaining the demurrer, the court found that the motion to strike was moot. The case was dismissed and judgment was entered in favor of the District Attorney and the County.

*The Brown Act*

The Brown Act (§ 54950 et seq.) provides for open meetings for local legislative bodies such as city councils, boards of supervisors and school boards. (§ 54952, subd. (a).) With certain specific exceptions where government has demonstrated a need for confidentiality (see, e.g., §§ 54957, 54956.9, 54957.6, 54956.8), the Act has been interpreted to mean that all of the deliberative processes by legislative bodies must be open and available for public scrutiny. Numerous provisions of the Act combine to ensure public notice of and access to meetings of legislative bodies. (§§ 54953, 54954.2, 54953.3, 54953.5, 54957.5.)

To assist in enforcement of the open meeting laws, the Act provides for criminal penalties and civil injunctive or declaratory relief. (§§ 54959, 54960.) In addition, actions taken in violation of the Brown Act may be declared null and void by a court. (§ 54960.1.) Criminal penalties are available only where some action is taken by the legislative body in knowing violation of the Act. (§ 54959.) Civil remedies are available to prevent further or future violations and do not require knowledge, or action taken. (§ 54960; *Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 48 [69 Cal.Rptr. 480].)

If an interested member of the public or member of the media believes a violation of the open meeting laws has occurred or is about to occur, or there is some belief that a past violation will reoccur, he or she may contact the local legislative body or its representative, a superior agency, or the district attorney. If such contacts are not successful in resolving the concerns, "[t]he district attorney or any interested person may commence an action by mandamus, injunction or declaratory relief for the purpose of stopping or preventing violations or threatened violations . . . by members of the legislative body . . . or to determine the applicability of [the Act] to action or threatened future actions of the legislative body." (§ 54960, subd. (a).) If the court determines there has been a violation of the Act, it may order the legislative body to tape-record its closed sessions and preserve the tape recordings. (§ 54960, subd. (b).)

The district attorney or any interested person may also commence an action for the purpose of obtaining a judicial determination that an action taken by a legislative body is null and void. Before commencing such an action, however, the district attorney or interested person must make a demand of the legislative body, within 90 days from the date the action was alleged to have been taken in violation of the Act, to cure or correct the action. If the legislative body does not do so within 30 days of receiving the

demand, the district attorney or interested party may file suit within 15 days to have the action declared null and void. (§ 54960.1, subds. (b) & (c).)

These time requirements and cure and correct provisions are contained only in section 54960.1 and not in section 54960. We interpret this to mean that these provisions apply only when a party seeks to have a particular action of a legislative body declared null and void and not when suit is brought under section 54960 to determine the applicability of the Act to past conduct or threatened future actions of the legislative body. (See, e.g., *California Alliance for Utility etc. Education* v. *City of San Diego* (1997) 56 Cal.App.4th 1024, 1028, fn. 3 [65 Cal.Rptr.2d 833] (*California Alliance*).) Therefore, contrary to appellant's assertions, the District Attorney in this case could have filed an action at any time seeking declaratory or injunctive relief under section 54960.

*Declaratory and Injunctive Relief Under the Brown Act*

Appellant argues that she is a proper party to bring an action for declaratory relief under section 54960 even though she is also a member of the Board whose conduct allegedly violated the Brown Act. The statutory language providing that "any interested person" may bring such an action appears to be all-inclusive and supports appellant's position. (See, e.g., *Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs., supra,* 263 Cal.App.2d at p. 46.) The closer question is whether appellant can state a cause of action under section 54960 against the District Attorney and the County, when they are not the parties who have allegedly committed the Brown Act violations.

Appellant argues that the Brown Act does not in any way limit or restrict what persons may be named in a declaratory relief action under the Act and that there are no exclusionary provisions specifically exempting governmental entities or public employees. Thus, absent a statement of legislative intent to the contrary, we are bound to construe the Act broadly to include the District Attorney as a proper defendant in this action. Respondents argue, on the other hand, that the Brown Act does not allow for an action filed against a district attorney and the public entity which is his or her employer, when the district attorney is acting only in his or her capacity to investigate claims alleging Brown Act violations.

We agree with respondents. Section 54960, which governs declaratory and injunctive relief actions under the Act, provides for several instances where the district attorney or any interested person may commence such an action. Under a plain reading of this section it appears that in each case it is

contemplated that the district attorney or other interested person will be the plaintiff and the local legislative body will be the defendant in the action. With emphasis added, the entire section provides as follows: "(a) The district attorney or any interested person may commence an action by mandamus, injunction or declaratory relief for the purpose of stopping or preventing violations or threatened violations of this chapter *by members of the legislative body* of a local agency or to determine the applicability of this chapter to actions or threatened future action *of the legislative body*, or to determine whether any rule or action *by the legislative body* to penalize or otherwise discourage the expression of one or more of its members is valid or invalid under the laws of this state or of the United States, or *to compel the legislative body* to tape record its closed sessions as hereinafter provided." (Italics added.)

Appellant argues that this language simply describes the realm of conduct that will be considered in a declaratory or injunctive relief action under the Brown Act, namely, the conduct of members of a legislative body. It does not require that the named defendant be the legislative body itself. Although it is true that the Brown Act does not expressly identify the appropriate defendants in an action to enforce or interpret its provisions, we believe its general purposes and basic principles of law dictate that the defendant in any such action must be the entity which has allegedly violated the Act.

While subdivision (a) of section 54960 refers to actions to stop or prevent the local legislative body from violating the Act, subdivision (b) of the same section further provides that if the court finds certain specified violations of the Act by the legislative body of the local agency, the court may "order the legislative body to tape record its closed sessions and preserve the tape recordings for the period and under the terms of security and confidentiality the court deems appropriate." This provision clearly contemplates that the legislative body will be a party defendant, subject to the court's order. The same holds true for section 54960.1, which sets forth the procedure to obtain injunctive relief to declare null and void an action taken by the legislative body of a local agency. That section specifically provides that demand must be made "of the legislative body" to cure or correct its action prior to filing suit. (§ 54960.1, subd. (b).) Finally, under section 54960.5, a court may award costs and attorney fees to a plaintiff who has prevailed in an action under section 54960 or section 54960.1. These costs and fees "shall be paid by the local agency . . . ." Thus it would appear that in order for the court to issue a binding decision in actions under sections 54960 and 54960.1 and impose costs under section 54960.5, the legislative body of the local agency or its representative or members or the agency itself must necessarily be defendants in the action. Indeed we have found no case concerning the Brown Act which deviates from this pattern and appellant has cited none.

Appellant relies on *California Alliance, supra,* 56 Cal.App.4th 1024, in support of the proposition that the Brown Act specifically authorizes this suit to resolve the controversy between her and the District Attorney regarding the alleged violations of the Act by members of the Board. The *California Alliance* case concerned a declaratory and injunctive relief action filed by concerned citizens against the City of San Diego, alleging that the city council was violating the Brown Act by conducting closed meetings regarding a utility company's obligation to bury power lines in the city. The trial court sustained a demurrer on the ground that the controversy was not ripe. On appeal the court overturned the trial court, finding that a controversy existed between the parties over the city's past compliance with the Brown Act. *California Alliance* does not help appellant, however. It is a classic Brown Act case brought by concerned citizens against the legislative body and the public entity alleged to have violated the Act. Here, although there may be a controversy between the plaintiff and the District Attorney, it is not a justiciable controversy under the Brown Act because the District Attorney is not the party alleged to have violated the Act.

Appellant alleged in her complaint that the District Attorney did violate the Act in this case by failing to comply with the Act's statutory cure and correct procedure and time limitations. As we have noted, these provisions apply only if a district attorney or other interested party seeks to have an action the local legislative body has taken declared null and void under section 54960.1. There are no similar requirements for a declaratory relief action under section 54960. And in any event in this case the District Attorney determined that the conduct complained of here did not warrant any criminal or civil action under the Act.

The gravamen of appellant's complaint was not that the District Attorney violated the Brown Act, but that he published inaccurate and unfounded statements about appellant's conduct as a member of the Board. She alleged that the District Attorney "had no authority to publish and republish the conclusions made in regard to the 'less serious' violations [of the Act]" and that these publications damaged appellant's reputation and "interfer[ed] with [her] rights as an elected official and as a citizen . . . ." These allegations sound in tort and are in the nature of an action for defamation. The Brown Act contains no provision for a "name-clearing" hearing such as appellant seeks here and we are unaware of any authority or precedent supporting the application of the Act in this way.

We conclude that appellant has failed to state a cause of action under section 54960 of the Brown Act against the District Attorney and the County. No cause of action for declaratory relief lies against these defendants for the reason that no alleged Brown Act violations were committed by

them. They are thus not proper party defendants under the Brown Act and there is no justiciable controversy within the meaning of the declaratory relief statute. (Code Civ. Proc., § 1060.)

Appellant's cause of action for injunctive relief fails for a further reason. She alleged that the District Attorney had threatened further action under the Brown Act based on his conclusions that violations had occurred, and she sought to enjoin him "from proceeding to threaten further action." These allegations are based on the following statements in the District Attorney's letter: "In lieu of filing . . . an action under Government Code Section 54960, the District Attorney's Office will require assurances from each named Trustee not to violate the Brown Act in the future. Additionally, the District Attorney's Office will expect the Trustees to conduct business under the following conditions: [¶] 1. That the Board Trustees ensure that each Trustee is provided with a copy of the Brown Act pursuant to Government Code Section 54952.7, and that the Board carefully adhere to the open meeting and agenda requirements of the Brown Act. [¶] 2. That all meetings, including 'special' meetings, be recorded. [¶] 3. That the Board agree to preserve all such recordings, mentioned in #2 above for at least six months. [¶] 4. That the Board not communicate orally or in writing as a quorum, on any issue of Board Business outside of Board Meetings for the purpose of engaging in collective deliberation and reaching a collective decision and commitment by a majority of the Board on these issues. [¶] We believe that compliance with the provisions of the Brown Act is the essential goal of our oversight responsibility. In the absence of voluntary compliance with these conditions as set forth, the District Attorney's Office reserves the right to reevaluate its decision to forego civil action as a means of compelling compliance with provisions of the Brown Act." (Appen. A, *post*, at pp. 1297-1298.)

The district attorney is specifically authorized to file an action under section 54960 if he or she determines at any time that a legislative body is not complying with the Brown Act. It stands to reason that appellant cannot enjoin the District Attorney in this case from taking an action he is statutorily authorized to take.

*Prosecutorial Immunity*

Appellant alleged that the District Attorney's statements in the letter and press release exceeded his authority, deprived her of due process and chilled her constitutional rights of free speech and association. In their demurrer, the District Attorney and the County argued that the prosecutorial and discretionary immunities provided in sections 821.6 and 820.2 bar an

action against them based on such allegations. Section 821.6 provides that "[a] public employee is not liable for injury caused by his [or her] instituting or prosecuting any judicial or administrative proceeding within the scope of his [or her] employment, even if he [or she] acts maliciously and without probable cause." Section 820.2 provides a more general immunity from liability for acts of public employees in the exercise of discretion vested in them. It follows that if section 821.6 applies, so also does section 820.2.

Appellant makes two arguments why these immunities do not apply here. First she argues that sections 821.6 and 820.2, which are contained in the California Tort Claims Act, apply only to actions for damages against government officials and not to an action for declaratory or injunctive relief action under the Brown Act. (§§ 814, 815.) Next appellant argues that even if she were seeking damages, the prosecutorial immunity provided by section 821.6 would not apply because the District Attorney was not "instituting or prosecuting any judicial or administrative proceeding within the scope of his employment" at the time of the conduct alleged in the complaint. In fact, he had decided not to institute any proceedings against her or the Board.

Appellant's first argument is unavailing, since we have concluded in the preceding section that no cause of action under the Brown Act for declaratory or injunctive relief is stated against the District Attorney and the County under the circumstances of this case. To the extent that the allegations in appellant's complaint can be construed to state a cause of action for defamation, or seek to enjoin the District Attorney from interfering with her rights of free speech, we believe the prosecutorial immunity contained in section 821.6 provides an independent basis for sustaining the demurrer.

Under California law the immunity statute is given an "expansive interpretation" in order to best further the rationale of the immunity, that is, to allow the free exercise of the prosecutor's discretion and protect public officers from harassment in the performance of their duties. (*Cappuccio, Inc. v. Harmon* (1989) 208 Cal.App.3d 1496, 1500 [257 Cal.Rptr. 4]; *Kayfetz* v. *State of California* (1984) 156 Cal.App.3d 491 [203 Cal.Rptr. 33].) In *Cappuccio,* the Department of Fish and Game found the plaintiffs guilty of underweighing fish. After the conviction, the investigating officer publicly announced that the plaintiffs had been found guilty of underweighing in an amount far in excess of the actual amount. The plaintiffs then brought an action for defamation and a demurrer was sustained on the basis of section 821.6. On appeal the plaintiffs argued that prosecutorial immunity did not apply because the allegedly defamatory remarks were made after prosecution had been completed. This court disagreed. We explained that the test of immunity is not the timing of the publication but whether there is a causal

relationship between the publication and the prosecution process. If the making and publication of the statements were part of the process, they were protected by the immunity in section 821.6.

In *Citizens Capital Corp.* v. *Spohn* (1982) 133 Cal.App.3d 887 [184 Cal.Rptr. 269], the plaintiffs filed suit against certain public officials and the State of California, alleging that the defendants had conspired to destroy their business as collection agencies by disseminating newspaper publicity charging them with improper conduct in operating their collection services and by commencing proceedings to revoke their licenses. The plaintiffs conceded that defendants were immune from liability under section 821.6 for instituting the revocation action, but argued that the immunity did not apply to the press releases charging them with improper conduct. The court refused to apply the immunity so narrowly, finding that the publicity "merely reported the results of official investigations of plaintiffs" and that the defendants were immune "regardless of their motivation." (133 Cal.App.3d at p. 889.)

Appellant argues that these cases are distinguishable because in each case there was actually a prosecution instituted. We do not believe this is a meaningful distinction under California's liberal interpretation of the immunity statute. Here there was a complaint filed with the District Attorney's office by interested citizens regarding alleged Brown Act violations by members of the Board. In response, the District Attorney conducted an investigation and made known the results of that investigation. We believe that the statements made in the press release were part of the prosecution process as that term is understood in the context of section 821.6. (See *Cappuccio, Inc.* v. *Harmon, supra,* 208 Cal.App.3d at p. 1500.) The District Attorney's conduct thus constitutes an exercise of prosecutorial discretion even though he decided not to prosecute an action at the time.

Cases cited by appellant, such as *Buckley* v. *Fitzsimmons* (1993) 509 U.S. 259 [113 S.Ct. 2606, 125 L.Ed.2d 209], which interpret federal immunities applicable in suits under the federal Civil Rights Act (42 U.S.C.A. § 1983) are not controlling here as appellant has not stated a cause of action under the federal Civil Rights Act.

*Privileged Statements Under Civil Code Section 47*

Appellant claims that the official duty privilege, which protects government officials from liability for statements made while acting in the "proper discharge of an official duty" (Civ. Code § 47, subd. (a)) or "in the initiation or course of [a] proceeding authorized by law . . . ." (Civ. Code

§ 47, subd. (b)) does not operate here since the District Attorney was acting beyond his official authority when he made statements released to the media regarding the "less serious violations" of the Brown Act by members of the Board. Again we disagree, finding that the District Attorney was acting within the "proper discharge of an official duty" in issuing the letter and media release.

*Kilgore* v. *Younger* (1982) 30 Cal.3d 770 [180 Cal.Rptr. 657, 640 P.2d 793] is instructive. In that case, the state Attorney General undertook an investigation of organized crime activities, following which he held a press conference and issued a report and press release concerning the results of the investigation. The report identified the plaintiff Kilgore as a participant in organized crime. Kilgore claimed this was false and sued the Attorney General for libel and slander. The Supreme Court held that the privilege contained in Civil Code section 47, subdivision (a) applied and that the Attorney General's actions in holding the press conference and issuing the report and press release were absolutely privileged because they were done by the Attorney General in the proper discharge of his official duties to investigate crime. The court stated: " 'Here, Younger called his press conference in his capacity as Attorney General, purported to act in such role throughout its duration and, at least as is here relevant, dealt exclusively with law enforcement issues. As such, it may not be said that his actions were outside the scope of his official duties, or that his motives were in fact improper.' " (*Kilgore* v. *Younger, supra,* 30 Cal.3d at p. 779.)

In our case, similar to *Kilgore*, the District Attorney issued a press release summarizing the results of an investigation of a complaint of alleged violations of the Brown Act. The District Attorney's ultimate decision neither to prosecute nor to file a civil action at the time does not, in our view, affect the application of the privilege in these circumstances.

## DISPOSITION

The judgment is affirmed.

Cottle, P. J., and Mihara, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 15, 1999.

APPENDIX A

# MONTEREY COUNTY

## OFFICE OF THE DISTRICT ATTORNEY

240 CHURCH STREET, ROOM 101
PO BOX 1369
SALINAS, CALIFORNIA 93902
TELEPHONE: (408) 755-5070
FAX (408) 755-5068

1200 AGUAJITO ROAD, ROOM 301
MONTEREY, CALIFORNIA 93940
TELEPHONE: (408) 647-7770
FAX: (408) 647-7762

250 FRANCISCAN WAY
P.O. BOX 632
KING CITY, CALIFORNIA 93930
TELEPHONE: (408) 385-8325
FAX: (408) 385-8365

PLEASE REPLY TO ADDRESS CHECKED

DEAN D. FLIPPO
DISTRICT ATTORNEY

March 28, 1997

Pacific Grove Unified School District
Superintendent, Dr. Barry Schimmel
Trustee Candice Ingram
Trustee David Wright
Trustee Michael Armstrong
Trustee Wendy Kramer
Trustee Rod Herndon
Louis T. Lozano, Esq.
Richard K. Harray, Esq.
District Office
555 Sinex Avenue
Pacific Grove, California 93950

Re: Complaint of Brown Act Violations

Dear District Superintendent, Named Trustees, Attorneys for the District and for Individual Trustees:

The District Attorneys Office has received a complaint which alleges that members of the Pacific Grove Unified School District (PGUSD) Board of Trustees have violated provisions of the Brown Act contained in Government Code Section 54950, et seq. The District Attorney's Office has conducted an investigation into these allegations and has determined that there is no evidence of criminal intent or purpose on the part of any member of the Board to violate the Brown Act and, therefore, no criminal sanctions are warranted under Government Code Section 54959. The investigation, however, did uncover evidence of the commission of several less serious Brown Act violations by one or more members of the PGUSD Board of Trustees. These violations are as follows:

1. On October 3, 1996, the full Board met in closed session to discuss the following matter: a public employee performance evaluation titled: Superintendent Goals. This was properly agendized, and by law, was a proper subject for a closed session. What occurred in the closed session was not an evaluation of the Superintendent. He was not evaluated as to implementation of past goals that had been properly adopted by the Board in open meetings. What did occur was that the Board set goals for the Superintendent which, in our view, are

matters of "acute public interest." Decisions as to major policies or goals that would impact the budget are matters that deserve the opportunity for public input. There is no argument that the Superintendent could be evaluated as to any personal development goals set by the Board or as to the implementation of properly adopted District goals. The Board, on October 3, went beyond this by establishing District goals which had not been agendized and discussed in open session with the public participating. It has been suggested that the goals such as class size reduction, were previously adopted at an open meeting on September 5. A review of the minutes of that meeting reveals that there was no adoption of any goal or plan, but merely the statement that "a plan would be presented at the October 3 meeting." Under the circumstances, it is our opinion that this closed session discussion and approval of goals for the current school year, as well as goals impacting the District in the future, violated the open meeting requirements of Government Code Sections 54953 and 54957.

2. Review of the record indicates that a majority of the Trustees on or about November 21, 1996, made a consensus decision to implement David Avenue School K-1 class placement for 1997/1998 without listing that decision as an agenda action item. It appears that at some time between the period of October 3, 1996, to December 5, 1996, this decision was, in fact, made. Based on the evidence available we are unable to determine what the exact time was that the decision was made. The evidence does indicate that on December 5, 1996, the Superintendent announced that the decision had been made. Accordingly, absent any record or conclusive evidence of a public decision being made, we can only conclude that at some time, the Board reached their decision and that that matter was not agendized at any meeting during this time period. It has been suggested that the decision was one within the authority of the Superintendent independent of any necessity for Board action. The record does not support this. In fact, on February 6, 1997, the Board rescinded the David Avenue School K-1 placement decision indicating that this was an appropriate Board matter rather than a personnel decision by the Superintendent which involved simply the transferring of teachers. We are unable to find any meeting where this matter was agendized and, thus, circumstantially we must conclude that Government Code Sections 54954.2(a) and 54956 have been violated.

Two other areas of concern were investigated, however, there was insufficient evidence to support a finding of a Brown Act violation. They are as follows:

1. During the investigation, it was learned that Trustee Wright disseminated a memorandum to other Trustees and to the District Superintendent on or about January 14, 1997. This memorandum set forth for discussion his opinions, suggestions, and strategy for promoting and not rescinding the Board's decision to implement the David Avenue School K/First Grade (K-1) class placement for the 1997-1998 school year. Our investigation reveals that there is a factual dispute as to whether a quorum of the Board was involved and, accordingly, we cannot conclude there is a violation of Government Code Section 54953. If there was a quorum involved, then this would be a violation.

2. It was also learned that preceding the PGUSD Board meeting on January 9, 1997, Board Trustee Herndon contacted three Board Trustees by telephone and solicited their agreement to collectively commit to vote for Trustee Herndon for Board President. Under the circumstances, if the Trustees engaged in conversations with Trustee Herndon for the purpose of reaching a collective commitment to vote for him to become Board President, then this conduct constituted a closed meeting in violation of Government Code Sections 54953. The evidence available does not support the conclusion that there was collective action on the part of the Board.

As I am sure you are aware, the strong declaration of legislative intent in Government Code Section 54950 makes clear that boards such as the PGUSD Board exist "to aid in the conduct of the people's business." It is the intent of the law that board actions be taken openly and that . . . deliberations be conducted openly." Further, the people of the State "do not yield their sovereignty to the agencies which serve them" and they "insist on remaining informed so that they may retain control over the instruments they have created." (Gov. Code Section 54950)

Although our office has determined that criminal enforcement of the Brown Act is not warranted, nevertheless, the analysis does not end there. Given the continuing nature of the violations found, and the likelihood that similar violations may occur in the future, the District Attorney's Office is compelled to take some action to prevent possible reoccurrence. Our authority to seek mandamus or injunctive relief for this purpose under Government Code Section 54960 is in no way limited by Government Code Section 54960.1. Furthermore, the District Attorney's Office is fully prepared to seek injunctive relief if necessary. In lieu of filing such an action under Government Code Section 54960, the District Attorney's Office will require assurances from each named Trustee not to

March 28, 1997
Page 4

violate the Brown Act in the future. Additionally, the District Attorney's Office will expect the Trustees to conduct business under the following conditions:

1. That the Board Trustees ensure that each Trustee is provided with a copy of the Brown Act pursuant to Government Code Section 54952.7, and that the Board carefully adhere to the open meeting and agenda requirements of the Brown Act.

2. That all meetings, including "special" meetings, be recorded.

3. That the Board agree to preserve all such recordings, mentioned in #2 above for at least six months.

4. That the Board not communicate orally or in writing as a quorum, on any issue of Board Business outside of Board Meetings for the purpose of engaging in collective deliberation and reaching a collective decision and commitment by a majority of the Board on these issues.

We believe that compliance with the provisions of the Brown Act is the essential goal of our oversight responsibility. In the absence of voluntary compliance with these conditions as set forth, the District Attorney's Office reserves the right to reevaluate its decision to forego civil action as a means of compelling compliance with provisions of the Brown Act.

Sincerely,

DEAN D. FLIPPO
District Attorney

JOSEPH R. BUCKALEW
Deputy District Attorney

JRB:DDF:hh

APPENDIX B

# MONTEREY COUNTY

## OFFICE OF THE DISTRICT ATTORNEY

S 140 CHURCH STREET, ROOM 101
PO BOX 1369
SALINAS CALIFORNIA 93902
TELEPHONE: (408) 755-5070
FAX (408) 755-5068

☐ 1200 AGUAJITO ROAD, ROOM 301
MONTEREY, CALIFORNIA 93940
TELEPHONE: (408) 647-7770
FAX (408) 647-7762

☐ 250 FRANCISCAN WAY
P.O. BOX 632
KING CITY, CALIFORNIA 93930
TELEPHONE: (408) 385-8325
FAX (408) 385-8365

PLEASE REPLY TO ADDRESS CHECKED

DEAN D. FLIPPO
DISTRICT ATTORNEY

**PRESS RELEASE**

**PACIFIC GROVE UNIFIED SCHOOL DISTRICT: BROWN ACT VIOLATIONS**

The Monterey County District Attorney's Office has concluded its investigation into allegations that the Pacific Grove Unified School District's Board of Trustees violated provisions of the Brown Act. It is not our intent to interject ourselves into the business of the school district, nor to take sides in local disputes. It is, however, the responsibility of the District Attorney, under California law, to respond to allegations where California laws may be violated. The allegations of Brown Act violations were brought to our attention by concerned citizens.

It is the responsibility of elected bodies and public agencies to ensure that they conduct their business in accordance with the very simple procedures required by the Brown Act. The Act makes clear that Boards such as the Pacific Grove Unified School District Board, exist "to aid in the conduct of the peoples' business." Additionally, it is the intent of the law that Board actions "be taken openly and that deliberations be conducted openly." It is a basic premise of the law that the citizens do not yield their sovereignty to the agencies which serve them and they have a right to insist on remaining informed so that they may retain control over the instruments that they have created.

The District Attorney's Office has determined that there is no evidence of criminal intent or purpose on the part of any member of the Board to violate the Brown Act and, therefore, no criminal sanctions are warranted under Government Code Section 54959. The investigation, however, did uncover evidence of the commission of several less serious Brown Act violations by one or more members of the PGUSD Board of Trustees. These violations are as follows:

1. On October 3, 1996, the full Board met in closed session to discuss the following matter: a public employee performance evaluation titled: Superintendent Goals. This was properly agendized and, by law, was a proper subject for a closed session. What

occurred in the closed session was not an evaluation of the Superintendent. He was not evaluated as to implementation of past goals that had been properly adopted by the Board in open meetings. What did occur was that the Board set goals for the Superintendent which, in our view, are matters of "acute public interest." Decisions as to major policies or goals that would impact the budget are matters that deserve the opportunity for public input. There is no argument that the Superintendent could be evaluated as to any personal development goals set by the Board or as to the implementation of properly adopted District goals. The Board, on October 3, went beyond this by establishing District goals which had not been agendized and discussed in open session with the public participating. It has been suggested that the goals such as class size reduction, were previously adopted at an open meeting on September 5. A review of the minutes of that meeting reveals that there was no adoption of any goal or plan, but merely the statement that "a plan would be presented at the October 3 meeting." Under the circumstances, it is our opinion that this closed session discussion and approval of District goals for the current school year, as well as goals impacting the District in the future, violated the open meeting requirements of Government Code Sections 54953 and 54957.

2. Review of the record indicates that a majority of the Trustees on or about November 21, 1996, made a consensus decision to implement David Avenue School K-1 class placement for 1997/1998 without listing that decision as an agenda action item. It appears that at some time between the period of October 3, 1996, to December 5, 1996, this decision was, in fact, made. Based on the evidence available we are unable to determine what the exact time was that the decision was made. The evidence does indicate that on December 5, 1996, the Superintendent announced that the decision had been made. Accordingly, absent any record or conclusive evidence of a public decision being made, we can only conclude that at some time, the Board reached their decision and that that matter was not agendized at any meeting during this time period. It has been suggested that the decision was one within the authority of the Superintendent independent of any

necessity for Board action. The record does not support this. In fact, on February 6, 1997, the Board rescinded the David Avenue School K-1 placement decision indicating that this was an appropriate Board matter rather than a personnel decision by the Superintendent which involved simply the transferring of teachers. We are unable to find any meeting where this matter was agendized and, thus, circumstantially we must conclude that Government Code Sections 54954.2(a) and 54956 have been violated.

Two other areas of concern were investigated, however, there was insufficient evidence to support a finding of a Brown Act violation. They are as follows:

1. During the investigation, it was learned that Trustee Wright disseminated a memorandum to other Trustees and to the District Superintendent on or about January 14, 1997. This memorandum set forth for discussion his opinions, suggestions, and strategy for promoting and not rescinding the Board's decision to implement the David Avenue School K/First Grade (K-1) class placement for the 1997-1998 school year. Our investigation reveals that there is a factual dispute as to whether a quorum of the Board was involved and, accordingly, we cannot conclude there is a violation of Government Code Section 54953. If there was a quorum involved, then this would be a violation.

2. It was also learned that preceding the PGUSD Board meeting on January 9, 1997, Board Trustee Herndon contacted three Board Trustees by telephone and solicited their agreement to collectively commit to vote for Trustee Herndon for Board President. Under the circumstances, if the Trustees engaged in conversations with Trustee Herndon for the purpose of reaching a collective commitment to vote for him to become Board President, then this conduct constituted a closed meeting in violation of Government Code Section 54953. The evidence available does not support the conclusion that there was collective action on the part of the Board.

Initially the concern about potential violations was brought forth by Trustee Herndon. We also note that it appears that all of the trustees were sincerely intent on carrying out the

business of the Board and were attempting to make the best decisions possible for the District. The District Attorney's Office, exercising its supervisorial responsibilities under the Government Code will not file, at this time, an action for mandamus or injunctive relief, but will require assurances that each individually named trustee agree to conduct the Board's business under the following conditions:

1. That the Board Trustees ensure that each Trustee is provided with a copy of the Brown Act pursuant to Government Code Section 54952.7, and that the Board carefully adhere to the open meeting and agenda requirements of the Brown Act.

2. That all meetings, including "special" meetings, be recorded.

3. That the Board agree to preserve all such recordings, mentioned in #2 above for at least six months.

4. That the Board not communicate orally or in writing as a quorum, on any issue of Board Business outside of Board Meetings for the purpose of engaging in collective deliberation and reaching a collective decision and commitment by a majority of the Board on these issues.

We believe that compliance with the provisions of the Brown Act is the essential goal of our oversight responsibility. We do not wish to resort to either criminal prosecutions or civil injunctive relief or to close monitoring of actions by the Board of Trustees. The business of the school district should be decided by the duly elected Trustees who have reached their decisions in compliance with open meeting and agenda requirements of the Brown Act. We anticipate that the Trustees will have no difficulties in agreeing to the conditions set forth. It merely asks them to commit themselves to following the Brown Act. In the absence of the Trustee's voluntary compliance with these conditions as set forth, the District Attorney's Office reserves its right to proceed civilly seeking injunctive relief to ensure that the Brown Act requirements are followed.

CONTACT: Dean D. Flippo, District Attorney
(408) 755-5070
Klar C. Wennerholm, Assistant District Attorney
(408) 647-7770

DATE: March 28, 1997