[No. A020795. First Dist., Div. Three. May 29, 1984.]

DANIEL O. KAYFETZ, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

COUNSEL

McNamara, Houston, Dodge, McClure & Ney, Richard E. Dodge and Richard L. Pierce for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, and Tyler B. Pon, Deputy Attorney General, for Defendants and Respondents.

**Opinion**

**WHITE, P. J.**—Appellant Daniel O. Kayfetz, M.D., sued the State of California, the Board of Medical Quality Assurance (Board), the Physicians Diversion Program, and the diversion program administrator, Jerome S. Becker, for damages arising from publication of disciplinary action against him in the official "Action Report" which is distributed to hospitals and doctors. Kayfetz alleges that the published report was inaccurate and violated promised confidentiality concerning his participation in the Diversion Program for Impaired Physicians, a drug rehabilitation program.

The trial court granted judgment on the pleadings, dismissing the complaint, on the grounds that the publication in the Board's official report was privileged, or the defendants[1] were immune "or both." We conclude that Government Code section 821.6 cloaks the action in immunity, and, therefore, affirm.

On April 10, 1980, the Division of Medical Quality (Division), a part of the Board of Medical Quality Assurance, which enforces the disciplinary and criminal provision of the Medical Practice Act (Bus. & Prof. Code, §§ 2001, 2003, 2004), issued an accusation charging appellant with theft and possession and self-administration of dangerous drugs, in violation of Business and Professions Code sections 2361, subdivision (e) and 2390.[2] Alleging unprofessional conduct, the Board sought suspension or revocation of appellant's physician's and surgeon's certificates under Business and Professions Code section 2360.[3]

On January 7, 1981, appellant, his attorney, and the attorney for the Board of Medical Quality Assurance signed a stipulation in which appellant admitted the charges and allegations, and accepted a decision revoking his license, staying the revocation, and placing appellant on five-years' probation subject to certain terms and conditions concerning his use and prescription of controlled drugs.

[1]The immunity statutes cover both the defendant public entities (Gov. Code, § 815) and Becker, a state official (Gov. Code, § 815.2). However, in the judgment on the pleadings and underlying motion only defendant entities are represented. Whether Becker was served is unclear. No explanation is given for the failure to include him in the relief granted defendants.

[2]These sections, in effect at the time of the accusation, have been renumbered as sections 2234 and 2239 respectively.

[3]Now section 2221.

Paragraph 8 of the stipulation provided: "The Division agrees to make the effective date of its decision sixty days after adoption of this Stipulation. During that sixty day period respondent on his own initiative will apply for admission to the Impaired Physicians Program. If the Impaired Physicians Program in its sole discretion determines that the respondent is a suitable candidate for the Impaired Physicians Program and if the respondent enters said program, then the decision of the Division shall not become effective and shall be suspended during such time as the respondent remains in good standing in the program. Upon successful completion of the Impaired Physicians Program, the decision of the Division and the Accusation shall be dismissed."

Appellant subsequently applied for admission to the diversion program and was admitted. The next year, after appellant successfully completed the program, on May 18, 1982, the Division set aside the decision and dismissed the accusation.

Meanwhile, in October 1981, the Board published its quarterly "Action Report," listing among the Board's disciplinary actions from March 1, 1981 to June 30, 1981, the following:

"Kayfetz, Daniel O. M.D. (C-8918)—Oakland 2390, 2361(e) B & P Code Stipulated Decision. Dishonest conduct involving thefts. Unlawful possession of controlled drugs for self administration. Revoked, stayed, 5 years probation on terms and conditions. ([F]urther stipulated that Decision is suspended if within 60 days he is accepted into the Board's Impaired Physicians Program.) April 24, 1981."

The announcement accurately describes both the charges and disposition. The problem is that the announcement implies that appellant was then on five-years' probation with conditions, when, in fact, the Division's decision was suspended because of his admission to and continued participation in the drug diversion program.

Appellant filed a complaint[4] seeking damages for libel, publication of confidential information, and breach of an agreement and duty to keep confidential his application to and participation in the diversion program. Defendants demurred to this complaint on various grounds, and were successful in forcing the dismissal of all but the first cause of action.

[4]Dr. Kayfetz first filed and was denied a claim with the State Board of Control against the Board, the program, and Becker.

With leave to amend appellant filed his first amended complaint alleging four causes of action: libel; breach of Civil Code section 1798.24 by revealing confidential information; breach of the Business and Professions Code section 2355 confidentiality requirement for all records "pertaining to the treatment" of a physician in a program; and breach of an agreement to keep confidential appellant's application to and participation in the diversion program. Defendant's motion for judgment on the pleadings was granted. It is this order that is the basis for the present appeal.

A motion for judgment on the pleadings admits all material and issuable facts contained in the challenged pleading, accepting properly pleaded facts as true. (*Cohen* v. *Ratinoff* (1983) 147 Cal.App.3d 321, 326-327 [195 Cal.Rptr. 84].) The standard of review of a judgment on the pleadings is the same standard that is used to review the propriety of a judgment following the sustaining of a demurrer. (*Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 675-676 [138 Cal.Rptr. 338].) The ultimate question on appeal "'. . . is whether, disregarding imperfections of form which could be cured by amendment, the facts pleaded and judicially noticed entitle [plaintiff] to any relief, . . . [Citations.]'" (*Pacific Architects Collaborative* v. *State of California* (1979) 100 Cal.App.3d 110, 118 [166 Cal.Rptr. 184], quoting *Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 632 [99 Cal.Rptr. 393]; *Cohen* v. *Ratinoff, supra,* at p. 327.)

IMMUNITY

Defendants claim immunity under Government Code section 821.6 which provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." If the employee is immune from liability, section 815.2 also immunizes the public entity.[5] The issue is whether the publication in the official "Action Report" is a part of the "prosecution" of a proceeding within the meaning of this section.

In *Citizens Capital Corp.* v. *Spohn* (1982) 133 Cal.App.3d 887 [184 Cal.Rptr. 269], section 821.6 was applied to immunize the state and officials from claimed injury resulting from widespread publicity charging appellant business with improper collection methods. The charges led to license revocation proceedings. On appeal the court affirmed dismissal of ap-

[5]Section 815.2, subdivision (b): "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

pellant's complaint, saying "immunity, even from wrongfully motivated action, is granted, as a matter of public policy, to avoid the risk of public officers avoiding their public duty for fear of the burden of trial and risk of its outcome." (*Id.*, at p. 889, quoting *Hardy* v. *Vial* (1957) 48 Cal.2d 577, 572-583 [311 P.2d 494].)

As *Citizens Capital Corp.* v. *Spohn* demonstrates, section 821.6 is not limited to suits for damages for malicious prosecution, although that is a principal use of the statute. (See *Engel* v. *McCloskey* (1979) 92 Cal.App.3d 870 [155 Cal.Rptr. 284], [§ 821.6 bars blackmail claim]; *Stearns* v. *County of Los Angeles* (1969) 275 Cal.App.2d 134 [53 Cal.Rptr. 482] [§ 821.6 bars actions for damages from negligent autopsy and subsequent prosecution for murder]; *Brown* v. *City of Los Angeles* (1968) 267 Cal.App.2d 849 [73 Cal.Rptr. 364] [§ 821.6 and other statutes bar a claim for damages erroneously notifying businesses to cease and desist from zoning violations].)

Publication of disciplinary action is part of a statutory scheme for the enforcement of the Medical Practices Act for the public benefit. The Board of Medical Quality Assurance is part of the Department of Consumer Affairs (Bus. & Prof. Code, § 2001).[6] Publication of the "Action Report" is part of the mechanism for disseminating information on practices "inimical to the interests of the consumer." (§ 335, subd. (a).) The Medical Practices Act is intended to protect the public from unscrupulous, careless, or dishonest practitioners. (*Sobey* v. *Molony* (1940) 40 Cal.App.2d 381, 387-388 [104 P.2d 868].) The Division is required to take action against any licensee who is charged with unprofessional conduct. (§ 2234.)

Here, as appellant argues, there is also a need for confidentiality to foster participation in the drug diversion program.[7] Section 2355 provides that all diversion program records "pertaining to the treatment of a physician" are confidential, and that upon rehabilitation "all records pertaining to the physician's and surgeon's participation" in the program shall be purged.[8]

---

[6]All further statutory references are to the Business and Professions Code unless otherwise specified.

[7]Section 2340 states: "It is the intent of the Legislature that the Board of Medical Quality Assurance seek ways and means to identify and rehabilitate physicians and surgeons with impairment due to abuse of dangerous drugs . . . affecting competency so that physicians and surgeons so afflicted may be treated and returned to the practice of medicine in a manner which will not endanger the public health and safety."

[8]Section 2355 states: "(a) After a committee in its discretion has determined that a physician and surgeon has been rehabilitated and the diversion program is completed, the committee shall purge and destroy all records pertaining to the physician's and surgeon's participation in a diversion program. [¶] (b) All board and committee records and records of proceedings pertaining to the treatment of a physician and surgeon in a program shall be kept confidential and are not subject to discovery or subpoena."

While the statutory scheme does protect records pertaining to treatment in the drug diversion program, nowhere does it clothe in secrecy the fact of drug abuse. Revocation or suspension of a certificate for drug abuse, for example, is a matter of public record. (§ 2017; Gov. Code, § 6250.)[9]

Appellant argues that section 821.6 does not apply because "the act which Appellant claims injured him did not arise or result from the institution of a proceeding but rather from an unauthorized publication which occurred five months after the action was dismissed." But, the action was not dismissed at the time of publication. Dismissal occurred the following year, after successful rehabilitation. The publication of this case was actually part of an ongoing proceeding, contemplating continued diversion program participation to earn suspension of the decision, and eventually, dismissal. (Cf. *Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710 [117 Cal.Rptr. 241, 527 P.2d 865], refusing to apply this section to immunize the county from damages for false imprisonment for retaining plaintiff after his time was served.)

Also, appellant's argument ignores the two-fold coverage for institution *or* prosecution of proceedings, which taken together appear to cover both the charges and the disposition. Further, the "Action Report" publication was authorized as part of the statutory scheme and was clearly "within the scope of [defendant's] employment," within the meaning of section 821.6. As appellant appears to concede, *Citizens Capital Corp.* v. *Spohn, supra,* 133 Cal.App.3d 887, applies where publication is an integral part of the prosecution process.[10]

Appellant argues that publication was prohibited by Civil Code section 1798.24, which bans disclosure of certain "personal or confidential" information.[11]

Section 1798.3 defines "confidential information" to include "[i]nformation containing medical . . . material." The provision is similar to the exception to the Public Records Act which protects "medical . . . files" from disclosure. (See Gov. Code, § 6254, subd. (c).) Similarly, sec-

[9]Under section 2229 rehabilitation of the licensee is a Division concern for other types of misconduct as well. To some extent publication of unprofessional conduct charges may frequently conflict with this goal.

[10]A similar rule has developed to extend the privilege of Civil Code section 47, subdivision 2 to cover publications having "some connection or logical relation to the proceeding." (*Royer* v. *Steinberg* (1979) 90 Cal.App.3d 490, 503 [153 Cal.Rptr. 499].)

[11]If appellant is correct, this could be an exception to the immunity granted by sections 821.6 and 815.2, and could give rise to an independent cause of action against the agency under Civil Code section 1798.45.

tion 2355 bans disclosure of records "pertaining to the treatment" of a physician in the drug diversion program.

We fail to see how the publication at issue unduly reveals "medical" history. The nature of the charge "unlawful possession of controlled drugs for self-administration" unavoidably implies drug consumption. But, appellant cites no authority for the proposition that the public interest in being informed should be frustrated because a physician is in a rehabilitation program. The "Action Report" states in parenthesis that the "decision is suspended if within 60 days he is accepted into the Board's Impaired Physicians Program," without revealing whether or not appellant opted for the program. If anything, appellant is claiming that the *failure* to reveal his participation in the program miscasts his license status.

Because we find that the defendants are immune from suit for the action in question, we need not decide other issues raised by the parties, principally whether Civil Code section 47 grants absolute, qualified or any privilege to the publication; whether truth constitutes a defense in this case; or whether defendants breached promised confidentiality.

We affirm the order granting judgment on the pleadings and dismissing the complaint.

Scott, J., and Barry-Deal, J., concurred.