[No. H003841. Sixth Dist. Mar. 2, 1989.]

CAPPUCCIO, INC., et al., Plaintiffs and Appellants, v.
TOM HARMON et al., Defendants and Respondents.

## COUNSEL

Myron E. Etienne, Jr., Ralph P. Guenther, Michael P. Masuda, and Noland, Hamerly, Etienne & Hoss for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Marvin Goldsmith, Tyler B. Pon, Teresa Tan and Helen F. Sweeny, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**PREMO, J.**—This is an appeal from a judgment of dismissal of the Monterey County Superior Court after that court had sustained respondents' demurrer without leave to amend.

### FACTS

In the underlying case of People of the State of California v. Cappuccio, Inc., et al., No. 7734, appellants were found guilty by the Monterey County Superior Court of 592 violations of former Fish and Game Code section 8011 (now § 8043) and Business and Professions Code sections 12512 and 17200 for underweighing squid purchased by them from fishermen by 295,300 pounds in 1979 and by 171,175 pounds in 1980.

On or about August 23, 1983, respondent Lieutenant Harmon, the investigating officer who testified against appellants, publicly announced that appellants had been found guilty of underweighing squid by 1,391,690 pounds in 1979 and 1,925,627 pounds in 1980. The incorrect figures were thereafter published by respondent California Department of Fish and Game in its departmental newsletter.

Appellants sued respondents for libel and slander. Respondents demurred on the grounds of absolute immunity under Government Code sections 821.6 and 815.2 and privileged communication under Civil Code section 47, subdivisions 1 and 2.

The trial court sustained the demurrer without leave to amend. We affirm.

### DISCUSSION

■ Appellants contend that respondents are not immune under Government Code section 821.6 because the alleged defamatory statements were made after the judicial proceeding against appellants had been completed. The contention is without merit.

Government Code section 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

■ It is apparent from the above-quoted provision that the test of immunity is causal connection, not time of occurrence. If the injury were caused by the initiation or prosecution of the proceeding, the fact that it occurred after the prosecution had been terminated does not defeat the immunity. ■ The critical question, therefore, is whether the making of

the statements by Harmon and the publication of the outcome of the prosecution in the departmental newsletter were part of the initiation or prosecution process. If they were, then they were protected by the immunity provided by Government Code section 821.6.

We find the case of *Kayfetz* v. *State of California* (1984) 156 Cal.App.3d 491 [203 Cal.Rptr. 33] illuminating. In *Kayfetz,* the Division of Medical Quality of the Board of Medical Quality Assurance accused Dr. Kayfetz of theft and possession and self-administration of dangerous drugs. On January 7, 1981, Kayfetz signed a stipulation in which he admitted the charges against him, and accepted a decision revoking his license, staying the revocation, and placing him on five years' probation, subject to certain terms and conditions. Under the stipulation, the decision was to be effective 60 days thereafter. Within the 60-day period, Kayfetz was to apply for admission to the Impaired Physicians Program. If Kayfetz was admitted and successfully completed the program, the decision and the accusation would be dismissed. Kayfetz applied for admission, was admitted, and successfully completed the program. Accordingly, pursuant to the terms of the stipulated decision, the Division set aside the decision and dismissed the accusation the following year (May 18, 1982).

Meanwhile, in October 1981, while Kayfetz was participating in the rehabilitation program, the Board published its quarterly "Action Report," which published the charges and the disciplinary action against Kayfetz. Kayfetz claimed he was damaged by the report, and sued for, among other causes of action, libel. The trial court granted judgment on the pleadings against Kayfetz. One issue on appeal was whether the publication of the "Action Report" was covered by the cloak of government immunity provided by Government Code section 821.6. Kayfetz contended that section 821.6 did not apply because the publication was made five months after the action was dismissed. The appellate court rejected this contention and observed that the action was not dismissed at the time of publication. However, although the court made that observation, the crux of its analysis was not the timing of the publication but the relationship between the publication and the prosecution process. According to the court, "[t]he issue is whether the publication in the official 'Action Report' is part of the 'prosecution' of a proceeding within the meaning of this section." (156 Cal.App.3d at p. 496.) The court concluded it was because "[p]ublication of the 'Action Report' is part of the mechanism for disseminating information on practices 'inimical to the interests of the consumer.' [Citation.]" (*Id.* at p. 497.)

The same is true here. In our open society, dissemination of information on practices inimical to the interests of the public is of vital concern. It is certainly part of the statutory scheme of the Fish and Game Code that

fishermen be protected against dishonest buyers of their catch. Fishermen who sell their catch need to know the honesty, or lack of it, of the buyers they deal with. Such dissemination of information is not possible without protecting the publication of the results of prosecutions for violations of the Fish and Game Code. In this case, Harmon merely reported on the outcome of the prosecution. As the investigating officer and an important witness for the prosecution, Harmon was expected and entitled to make public statements. Such statements, like the publication in *Kayfetz*, were part of the prosecution process. Certainly, part of the prosecution process is its outcome, and a report on that outcome is a part no less. If a report on the outcome, like the outcome itself, is part of the prosecution process, and we hold that it is, then such report must necessarily follow the outcome, since before the outcome there is no outcome to report. Therefore, the argument that Harmon's statements and the publication of the departmental newsletter are not covered by the Government Code section 821.6 immunity because they were made after the prosecution had ended is devoid of merit.

What, in fact, constitutes the prosecution process within the meaning of Government Code section 821.6? When does it end? Does it end when the judgment of the court finding the defendant guilty becomes final? Or does it continue until the sentence or penalty is served out or executed? Our analysis of *Kayfetz* suggests an expansive interpretation to include the period up to the service of the sentence or the execution of the penalty. In *Kayfetz,* although the court observed that the "dismissal occurred the following year, after successful rehabilitation," the use there of the word "dismissal" was not in the context of Kayfetz being innocent of the charges or of the charges being dropped because of any technical or substantive infirmity; rather, "dismissal" there was used in the context of Kayfetz having served out the rehabilitation program pursuant to the terms of the stipulated decision. In other words, the case was dismissed because he had served out the discipline imposed upon him. This was the equivalent of full execution of the decision against him. Hence, when the *Kayfetz* court said that the publication of the "Action Report" was part of the prosecution process, it referred to that stage of the prosecution process after the making of the stipulated decision but before the completion of the prescribed rehabilitation program, since it was during this period when the publication was made. Under this analysis, the prosecution process continues until the decision is executed or completed. Accordingly, it can be said that Harmon's statements and the publication of the newsletter were made during the prosecution process, as this term is understood in the context of Government Code section 821.6.

This liberal interpretation is consistent with, and promotes, the rationale of the immunity which was stated by the Supreme Court in *White* v. *Towers*

(1951) 37 Cal.2d 727, 729-730 [235 P.2d 209, 28 A.L.R.2d 636], in these words: "When the duty to investigate crime and to institute criminal proceedings is lodged with any public officer, it is for the best interests of the community as a whole that he be protected from harassment in the performance of that duty. The efficient functioning of our system of law enforcement is dependent largely upon the investigation of crime and the accusation of offenders by properly trained officers. A breakdown of this system at the investigative or accusatory level would wreak untold harm. 'Criminal law does not enforce itself. It demands the assistance of valid evidence and fearless officials to put it in execution. Because of their tendency to obstruct the administration of justice, it is the policy of the law to discourage actions for malicious prosecution.' [Citation.] It is patent that defendant Towers is a law enforcement officer, charged with the duty of enforcing laws for the protection of fish and game. As such officer he is entitled to the immunity from civil liability with which the law surrounds officials directly connected with the judicial processes. To rule otherwise would place every honest law enforcement officer under an unbearable handicap and would redound to the detriment of the body politic. 'The public welfare requires that this choice (whether or not to institute proceedings) shall be free of all fear of personal liability. To assure this freedom of action it is deemed best to make the assurance positive and definite by securing him against even actions based upon a malicious abuse of his official power.' [Citation.]"

*Towers,* like this case, also involved violations of the Fish and Game Code, and the peace officer there cloaked with immunity was also, like Harmon here, an investigator for the State Fish and Game Commission.

Appellants' reliance on *Tallmadge* v. *County of Los Angeles* (1987) 191 Cal.App.3d 251 [236 Cal.Rptr. 338] and *Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710 [117 Cal.Rptr. 241, 527 P.2d 865] is misplaced. In *Tallmadge,* the court allowed the action to proceed against the County of Los Angeles even after the prosecution had ended, not because of any act by the district attorney related to the initiation or prosecution of any judicial proceeding, but because of the failure of the clerk of court to issue the proper notice of the location of the exhibits and the method by which the owner might obtain such exhibits. The court held that such failure constituted conversion which is not barred by the immunity provision of Government Code section 821.6.

*Sullivan* is likewise inapposite. The *Sullivan* court did not, contrary to what appellants want this court to believe, conclude "that because the county's tortious conduct occurred after the prosecution which landed Plaintiff in jail had terminated, Government Code section 821.6 did not apply." What the court there held was that Government Code section 821.6 does not apply to a prosecution for false imprisonment. Whether the false

imprisonment was committed during the judicial proceeding or after the termination thereof was not an issue in that case, and the court did not address the issue.

We conclude that the statements in question are covered by the immunity provided by Government Code section 821.6. ■ Since Harmon is immune, respondent California Department of Fish and Game is equally immune because, under Government Code section 815.2, subdivision (b), "[e]xcept as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." (See also *Kemmerer* v. *County of Fresno* (1988) 200 Cal.App.3d 1426, 1435 [246 Cal.Rptr. 609].)

Appellants further contend that the trial court erred in sustaining the demurrer without leave to amend because there was a reasonable possibility that appellants could state a cause of action. We disagree.

We have determined, as a matter of law, that under the facts recited in the complaint, respondents are entitled to the immunity accorded by Government Code sections 821.6 and 815.2, subdivision (b). Where the facts are not in dispute and the nature of plaintiff's claim is clear, but, under the substantive law, no liability exists, leave to amend should be denied. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 945, p. 379.) Hence, the trial court committed no error in sustaining respondents' demurrer without leave to amend.

Having determined that respondents are entitled to the immunity granted by Government Code sections 821.6 and 815.2, subdivision (b), we need not further determine if they are additionally entitled to another privilege under Civil Code section 47, subdivisions 1 and 2.

The judgment of dismissal is affirmed.

Agliano, P. J., and Brauer, J., concurred.