[No. B214842. Second Dist., Div. Three. Dec. 23, 2009.]

COUNTY OF LOS ANGELES et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CHARLES WILLIAM WEST et al., Real Parties in Interest.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

---

†The opinion is ordered published in the Official Reports except for parts 2 and 5 of the Discussion.

**COUNSEL**

Collins Collins Muir & Stewart, Tomas A. Guterres, Douglas Fee, Catherine M. Mathers and Christian E. Foy Nagy for Petitioners.

No appearance for Respondent.

Knickerbocker Law Corporation and Richard L. Knickerbocker for Real Parties in Interest.

OPINION

**ALDRICH, J.—**

INTRODUCTION

Plaintiffs Charles William West, his wife Alane Marie West, and their two related business interests brought an action against the County of Los Angeles (the County), District Attorney Steve N. Cooley, chief administrative officer (CAO) David Janssen, and others,[1] seeking damages for violation of their civil rights under Civil Code section 52.1 and section 1983 of title 42 of the United States Code (section 1983), for breach of bailment, and seeking an injunction. The allegations at issue all stem from injuries plaintiffs alleged they suffered when the district attorney's office searched and seized plaintiffs' property pursuant to a warrant, and retained and damaged some of that property. All defendants moved for summary adjudication of the first four causes of action. The County and district attorney (defendants) raised statutory immunity from liability as grounds. The remaining four defendants, Janssen, Harper, McCauley, and Henry (herein referred to as the administrative defendants or, together with defendants, as all defendants), argued that after the trial court sustained their demurrer to the first amended complaint with leave to amend, plaintiffs filed a second amended complaint that named Janssen but made no allegations that any of the administrative defendants committed the acts alleged in the first four causes of action. The trial court denied the summary adjudication motion, and all defendants petitioned this court for writ of mandate. We issued an order to show cause. We now conclude that the trial court erred in denying defendants' summary adjudication motion. Accordingly, we grant the petition and direct the trial court to vacate its orders.

FACTUAL AND PROCEDURAL BACKGROUND

1.  *The events giving rise to the lawsuit*

Charles William West was the assistant director of real estate employed by the County's Chief Administrative Office. Alane Marie West is Charles's wife.[2] The Wests are the principals in plaintiff Interstate Equities II, LLC. Plaintiff Primare was the sole proprietorship and "doing business as" of Alane since

---

[1] The additional defendants named in the first amended complaint are the chief deputy of the County's Chief Administrative Office, Sharon Harper; county director of human resources, Michael Henry; and former county controller, John Tyler McCauley.

[2] For clarity, we shall refer to Charles and Alane by their first names and mean no disrespect thereby.

November 2005. Before that, Alane was the sole shareholder of a predecessor entity known as Primare, Inc.

In the fall of 2000, upon receipt from multiple sources of allegations that Charles was involved in criminal conduct, the public integrity division of the office of the district attorney commenced an investigation. Karen Pewitt, senior investigator in the real estate fraud unit of the district attorney's office's bureau of investigation, gathered information about Charles's interactions with certain private developers. After reviewing reports and other real estate documents related to County development, and interviewing individuals from the real estate division, the county auditor controller, the office of the CAO, and assorted federal government offices, Pewitt concluded that she possessed sufficient probable cause to seek a search warrant. A magistrate signed the search warrant at Pewitt's request and under her affidavit and statement of probable cause. Portions of the affidavit are under seal.[3]

The search warrant was served on September 14, 2005, at the Wests' house and office, purportedly by "District Attorney Police Investigators under the direction of Julie Silva, Senior Investigator, Bureau of Investigation, District Attorney's Office." From the Wests' house, investigators seized various documents and several computer hard drives belonging to Primare, Inc., a network server, a laptop, and passports, among other things.

On September 16, 2005, two days after execution of the warrant, Jennifer Lentz Snyder, the public integrity division's assistant head deputy district attorney, moved for an order for duplication of seized property, and attached a copy of the property receipt and inventory sheets completed by the investigators. Despite the fact that her office was under no legal obligation to move for duplication, Snyder declared, she filed the motion as a courtesy in anticipation of the Wests' request. Snyder declared that "[i]t was my intention to facilitate and expedite the process, particularly regarding the duplication of hard drives which would be necessary in order to return the computers and other electronic hardware to those from whom they were seized." The magistrate signed the order for duplication calling for return of the computers and copies of the hard drives to the Wests and retention of the original hard drives by the district attorney's office.

On four separate occasions, the People moved the court for an order to return the seized property to plaintiffs. Snyder sent a letter dated September 19, 2005, to the Wests explaining how to obtain copies of seized documents and indicating that any legal challenge to the propriety of the seizure would have to be brought to the court. Snyder sent a second such letter to the Wests.

---

[3] While plaintiffs assert that "the claim of probable cause is disputed," the only proffered bases for the dispute were evidentiary objections made to Pewitt's declaration, which objections the trial court overruled.

On October 14, 2005, Pewitt released 10 computers to a representative of the Wests and their companies. Pewitt declared that she witnessed the representative put the computers in the back of a truck.

On October 24, 2005, six weeks after the search, Pewitt returned the Wests' passports.

Snyder declared that on March 7, 2006, she moved the trial court for release of evidence. The record contains no conformed copy of the request and the document in the record is unsigned by the magistrate. On April 5, 2007, and May 7, 2007, the People requested release of materials seized.

The district attorney did not personally participate in, review, or direct the gathering or evaluation of evidence, analysis of the law, or recommendations. He did not personally file criminal charges and did not decide to close the investigation. Those decisions were strictly confined to the public integrity division of the district attorney's office. Still, the district attorney was aware of the underlying circumstances of the investigation and has the ultimate authority with regard to the operations of his office as he sets policy.

At some point not established in the record, Snyder concluded, upon review of the voluminous evidence and the applicable law, that there was insufficient *admissible* evidence to prove criminal charges beyond a reasonable doubt against Charles. She recommended that the case be closed. As a consequence, no criminal charges were filed against the Wests or their interests in relation to this particular investigation.

### 2. *The complaint*

Instead of filing motions for return of the property, to produce copies of the business records seized, to request return of their passports, or to challenge the existence of probable cause (Pen. Code, §§ 1536.5, 1539, 1540), the Wests and their business interests sued the County, the district attorney in his official capacity, and the administrative defendants, Janssen, Harper, Henry, and McCauley. The complaint alleged, as is relevant in this proceeding, injury caused by an unreasonable search, seizure, prolonged retention, and damage to property that deprived plaintiffs of their civil rights in violation of section 52.1 of the Civil Code (first cause of action) and in violation of section 1983 (second cause of action), and that breached an involuntary bailment (third cause of action). Plaintiffs also sought an injunction against the waste of taxpayer funds (Code Civ. Proc., § 526a) (fourth cause of action).[4]

---

[4] In their fifth and sixth causes of action, plaintiffs sought a writ of mandamus pursuant to Code of Civil Procedure section 1085 for alleged violations of Charles's employment rights.

The trial court sustained the County's demurrer to the first amended complaint with leave to amend. Plaintiffs' second, and operative, complaint did not name Harper, Henry, or McCauley as party defendants. The trial court then sustained the demurrer to the third and fourth causes of action in the second amended complaint (breach of bailment and injunction) as to the administrative defendants, Janssen, Harper, Henry, and McCauley and denied leave to amend. Thus, the operative complaint contains no allegations that any administrative defendant was involved in the search or seizure of plaintiffs' belongings. Indeed, the operative complaint does not name Harper, Henry, or McCauley as a party in the first four causes of action.

### 3. *Summary adjudication*

All defendants moved for summary adjudication of the first four causes of action. They observed that these causes of action arose from the search and seizure of property pursuant to the warrant. They asserted they were entitled to summary adjudication because undisputed evidence showed, based on myriad immunities, that no defendant could be held liable to plaintiffs, and Janssen was not involved in the search and seizure.

In opposing the motion, plaintiffs asserted that the search and seizure of property exceeded the scope of the warrant, there was no probable cause for the warrant, and defendants irreparably destroyed computer data and even failed to return some property until after the complaint was filed. Plaintiffs disputed that all items belonging to them have been returned. They insisted that some personal items were not returned until after they filed their complaint, and that a Radom nine-millimeter pistol has yet to be returned. Plaintiffs also disputed that the computers were returned to them in working condition.

The trial court denied the summary adjudication motion noting, while the immunities cited protect defendants from liability for the warrant, the search, and the seizure, that the complaint alleged the destruction of property and retention of property after September 14, 2005, when the search was conducted, for which there is no immunity. All defendants filed their petition for writ of mandate or prohibition seeking an order directing the trial court to vacate its order denying their summary adjudication motion and instead enter an order granting it. We issued an order to show cause and ordered that all proceedings in this case be stayed.

---

Those employment-related portions of the complaint were severed from the operative complaint and are not at issue in this proceeding. The severed causes of action are currently pending in the writs and receivers department of the superior court. Trial of the mandamus action was scheduled for June 18, 2009. We issued an order staying all matters.

## CONTENTIONS

All defendants contend that the trial court erred in denying their summary adjudication motion.

## DISCUSSION

### 1. *Standard of review*

Summary adjudication " ' "is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. [Citation.] We review the trial court's decision to grant [defendants] summary [adjudication] de novo." [Citation.]' [Citation.] An appellate court is not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not the rationale. [Citation.]" (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 951 [62 Cal.Rptr.2d 142].)

In moving for summary adjudication, "[a] defendant or cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 [107 Cal.Rptr.2d 841, 24 P.3d 493].) Once the moving party defendant meets its burden, the burden shifts to the plaintiff to show a triable issue of material fact exists as to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) To meet that burden, the plaintiff must set forth the specific facts showing the triable issue of material facts. (*Ibid.*) "Where the plaintiff fails to satisfy this burden, judgment in favor of the defendant shall be granted as a matter of law. [Citation.]" (*Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014 [20 Cal.Rptr.2d 281].)

The issues to be addressed in a summary adjudication motion are framed by the pleadings. (*Wattenbarger v. Cincinnati Reds, Inc.* (1994) 28 Cal.App.4th 746, 750 [3 Cal.Rptr.2d 732].) "Summary [adjudication] will be upheld when, viewing the evidence in a light most favorable to the opponent, the evidentiary submissions conclusively negate a necessary element of plaintiff[s'] cause of action, or show that under no hypothesis is there a material issue of fact requiring the process of a trial. [Citation.]" (*Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1024 [4 Cal.Rptr.3d 385].)

2. *Who are the defendants in this proceeding?*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

3. *The trial court erred in denying summary adjudication of the first cause of action for violation of civil right under Civil Code section 52.1 and the third cause of action for breach of involuntary bailment.*

Bearing in mind that the issues are framed by the pleadings (*Wattenbarger v. Cincinnati Reds, Inc., supra*, 28 Cal.App.4th at p. 750), the first cause of action in plaintiffs' operative complaint, raised against "all defendants," pled injuries from the search and seizure of evidence and the prolonged retention and damage of evidence seized, which conduct violated plaintiffs' civil rights protected by Civil Code section 52.1, subdivision (b) by exceeding the scope of the warrant, infringing on plaintiffs' right to travel, and depriving plaintiffs of the use and enjoyment of their property without just compensation. The complaint did not name as a party anyone who actually obtained the search warrant or conducted the search and seizure. Additionally, in the unpublished portion of this opinion, we have held that the trial court erred in refusing to dismiss the four administrative defendants from the first two causes of action in the second amended complaint. Therefore, the only defendants remaining in this writ proceeding are the district attorney and the County.

All defendants claimed they were entitled to summary adjudication because the district attorney's investigatory staff, the district attorney himself, and the County are all immune to these claims. (Gov. Code, §§ 821.6, 820.8, 815.2, 815.6, 820.2.)

■ Civil Code section 52.1[7] is part of a comprehensive legislation designed to combat hate crimes. (*Venegas v. County of Los Angeles* (2007) 153

---

[*]See footnote, *ante*, page 218.

[7] Civil Code section 52.1, subdivision (a) reads in part: "If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. . . ."

Civil Code section 52.1, subdivision (b) reads: "Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured."

Cal.App.4th 1230, 1242 [63 Cal.Rptr.3d 741].) " '[T]he statutory language fulfills that purpose by providing remedies for certain misconduct that interferes with any "right[] secured by the Constitution or laws of the United States, or . . . of this state . . . ." ' " (*Ibid.*, fn. omitted.) Civil Code section 52.1 does not require "state action" but applies to private as well as government actors. Also, under section 52.1, liability is limited to violations of constitutional or statutory rights accomplished by " 'threats, intimidation, or coercion.' " (153 Cal.App.4th at p. 1242.)

■ As for immunities to liability, "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." (Gov. Code, § 815.2, subd. (b).) Section 820.8 immunizes public employees from liability for injuries caused by another.[8] Section 821.6 establishes that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." ■ "California courts construe section 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits. [Citations.]" (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1048 [55 Cal.Rptr.3d 158] (*Gillan*).) "Section 820.2 provides a more general immunity from liability for acts of public employees in the exercise of discretion vested in them. It follows that if section 821.6 applies, so also does section 820.2." (*Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1292 [89 Cal.Rptr.2d 60] (*Ingram*).)[9]

■ Turning to Government Code sections 821.6 and 815.2, they immunize the County and its employees "from liability for the actions or omissions of the investigating officers if: (1) the officers were employees of the County; (2) [the plaintiffs'] injuries were caused by acts committed by the officers to institute or prosecute a judicial or administrative proceeding; and (3) the conduct of the officers while instituting or prosecuting the proceeding was within the scope of their employment." (*Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205, 1209 [34 Cal.Rptr.2d 319] (*Amylou R.*).)

---

[8] Government Code section 820.8 reads: "Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person. Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission."

[9] Government Code section 820.2 reads: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Courts have held that the institution and prosecution of judicial proceedings in Government Code section 821.6 is not limited to the act of filing a criminal complaint. Acts taken during an investigation prior to the institution of a judicial proceeding are also protected by section 821.6 because investigations are essential steps toward the institution of formal proceedings. (*Amylou R., supra*, 28 Cal.App.4th at pp. 1209–1210; *Richardson-Tunnell v. School Ins. Program for Employees (SIPE)* (2007) 157 Cal.App.4th 1056, 1062 [69 Cal. Rptr .3d 176], citing *Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1436–1437 [246 Cal.Rptr. 609].)

When the prosecutorial immunity under Government Code section 821.6 applies, it extends to immunize against claims by those suffering the injury who are not the target of the prosecution. (*Amylou R., supra*, 28 Cal.App.4th at p. 1214.) The immunity in section 821.6 not only protects against claims for malicious prosecution (*Gillan, supra*, 147 Cal.App.4th at p. 1048), but "extends to other causes of action arising from conduct protected under the statute . . . ." (*Ibid.*) The immunity applies even if the officers abused their authority. (*Randle v. City and County of San Francisco* (1986) 186 Cal.App.3d 449, 456–457 [230 Cal.Rptr. 901] [immunity applied to allegation of suppression of evidence because conduct giving rise to allegation occurred in scope of employment].)

More important, the immunity applies "even if the authorities later decide not to file charges." (*Gillan, supra*, 147 Cal.App.4th at p. 1048, italics added, citing *Ingram, supra*, 74 Cal.App.4th at p. 1293 and *Amylou R., supra*, 28 Cal.App.4th at pp. 1209–1211.) Government Code section 821.6 appears also to extend to conduct that occurred after the close of the proceeding. (*Cappuccio, Inc. v. Harmon* (1989) 208 Cal.App.3d 1496 [257 Cal.Rptr. 4].) *Ingram, supra*, 74 Cal.App.4th 1280 held that where the district attorney conducted an investigation in response to a complaint filed with the district attorney's office by interested citizens alleging Ralph M. Brown Act (Gov. Code, § 54950 et seq.) violations, the district attorney was protected by the prosecutorial immunity of section 821.6 for the statements made after close of the investigation because those statements were part of the prosecution process and hence were an exercise of prosecutorial discretion even though no prosecution was brought. (*Ingram*, at p. 1293; cf. *Gillan, supra*, at pp. 1048–1049 [although public employee can be liable for false imprisonment, § 821.6 immunizes employee for conduct occurring after false imprisonment ends].) The test of immunity is not the timing of the offending conduct but whether there is a causal relationship between the act and the prosecution process. Thus, if the act is taken as part of the process, it is protected by the immunity in section 821.6. (*Cappuccio, Inc. v. Harmon, supra*, at pp. 1498–1500.)

Here, based on the undisputed evidence, the unnamed investigators on the district attorney's staff are immune from liability for their conduct alleged in the first cause of action because all of the acts—investigating, obtaining the warrant, searching, seizing, retaining, and even damaging plaintiffs' property—were committed as part of an investigation of crimes leading to prosecution in a judicial proceeding. This conduct fell within the scope of the investigating staff members' employment with the County. Hence, the elements of Government Code section 821.6 immunity are present, even if the district attorney's investigating staff "act[ed] maliciously and without probable cause." (§ 821.6.)

■ The trial court denied summary adjudication based on the prosecutorial immunity of Government Code section 821.6 on the misconception that it applied only to actions taken in preparation for formal proceedings and did not cover the complaint's "broader" allegations of prolonged retention and damage of property after the search and seizure on September 14, 2005. But, as demonstrated, the immunity is dependent not on when the acts occurred, but whether they are causally connected to the investigation and prosecution. (*Cappuccio, Inc. v. Harmon, supra*, 208 Cal.App.3d at pp. 1498–1500; accord, *Ingram, supra*, 74 Cal.App.4th at pp. 1292–1293.) Here, all of the acts of which plaintiffs complain were triggered by allegations of criminal activity and were part of the investigation and prosecution process, even after the decision was made not to file charges, and so they are immunized by Government Code section 821.6.

We are unpersuaded by plaintiffs' contention that there is a triable issue with respect to the existence of probable cause underlying the search warrant. Observing that portions of the warrant and affidavit are sealed and defendants have not responded to discovery about them on the grounds of privilege under Evidence Code section 1040,[10] plaintiffs argue that defendants have not carried their burden on summary adjudication to demonstrate probable cause. The contention is unavailing. The immunity in Government Code section 821.6 applies "even if [the public employee] acts maliciously and *without probable cause*." (§ 821.6, italics added.) Also, it is plaintiffs who have not carried their burden. Defendants submitted Pewitt's declaration attesting to the fact that she drafted and signed the affidavit supporting the warrant under oath. Pewitt described the affidavit as setting forth documents and reasons for her belief that probable cause existed to search the Wests' house and office for evidence used in the commission of a felony or tending to show that a felony had occurred. Plaintiffs did not dispute this declaration; they merely

---

[10] Evidence Code section 1040, subdivision (b)(2) gives a public entity privilege to refuse to disclose official information where disclosure "is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice . . . ."

posed evidentiary objections, which objections were overruled. *Nor did plaintiffs dispute that a magistrate signed the search warrant at the request and under the affidavit and incorporated statement of probable cause signed by Pewitt.* When we review the magistrate's determination, we defer to his or her finding of probable cause unless the warrant is invalid as a matter of law. (*People v. Thuss* (2003) 107 Cal.App.4th 221, 235 [133 Cal.Rptr.2d 149]; see also *Wood v. Emmerson* (2007) 155 Cal.App.4th 1506, 1519 [66 Cal.Rptr.3d 847].) Plaintiffs submitted no evidence in opposing summary adjudication to raise a triable issue of fact concerning the validity of the probable cause determination. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at pp. 849, 857.)

Plaintiffs also argue that defendants were not entitled to prosecutorial immunity because immunities were not intended to prevail over statutes, such as Civil Code section 52.1. But, "under California law, '[i]t is generally recognized that a statutory governmental immunity overrides a statute imposing liability.' [Citations.] Thus, absent 'a clear indication of legislative intent that statutory *immunity* is *withheld or withdrawn*,' a specific statutory immunity applies to shield a public employee from liability imposed by a particular statute. [Citations.]" (*O'Toole v. Superior Court* (2006) 140 Cal.App.4th 488, 504 [44 Cal.Rptr.3d 531] [holding Gov. Code, § 820.6 qualified immunity protected against Civ. Code, § 52.1 claims].) *O'Toole* examined Civil Code section 52.1 and "found no indication the Legislature intended to create an exception to the general rule. Civil Code section 52.1 contains no indicia reflecting an intent that public employees may be sued despite a statutory immunity that would otherwise apply." (*O'Toole, supra,* at p. 504.) Accordingly, we reject plaintiffs contention that Civil Code section 52.1 prevails over the Government Code section 821.6 immunity.

This conclusion is not undermined by our opinion in *Gillan, supra,* 147 Cal.App.4th at page 1047, plaintiffs' contention to the contrary notwithstanding. Application of the Government Code section 821.6 immunity depends " 'on how the injury is caused . . . .' [Citations.]" (*Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, 757 [63 Cal.Rptr.2d 842, 937 P.2d 273].) We held in *Gillan* that where Government Code section 821.6 provides no immunity from liability for false arrest or false imprisonment, it was not available to immunize a public employee for alleged violations of Civil Code section 52.1 where that cause of action in *Gillan* was "based on *an arrest* without probable cause . . . ." (*Gillan, supra,* at p. 1050, italics added.) Here, by contrast, plaintiffs alleged their injuries resulted from defendants' search and seizure of property without probable cause and for improper reasons, and prolonged retention of and damage to that property. Plaintiffs' brief describes the investigation as a "purely investigatory fishing expedition or *witch hunt*." (Italics added.) Stated otherwise, plaintiffs allege violations of their civil rights by *malicious prosecution*, i.e., initiating prosecution of another under

lawful process but from malicious motives and without probable cause. (*Asgari*, at p. 757.) That is, the specific conduct plaintiffs allege is exactly that which Government Code section 821.6 was designed to immunize. (See *Gillan, supra*, at p. 1048.)

In light of the general rule and policy favoring immunity for law enforcement officers, Government Code section 821.6 bars the claims in the first cause of action. (*Amylou R., supra*, 28 Cal.App.4th at p. 1214.) By operation of Government Code sections 820.2 and 820.8, the district attorney is likewise immune. (*Weaver v. State of California* (1998) 63 Cal.App.4th 188, 197, 202 [73 Cal.Rptr.2d 571].) Because the district attorney is shielded from liability, the County is immune. (Gov. Code, § 815.2, subd. (b); *O'Toole v. Superior Court, supra*, 140 Cal.App.4th at p. 509.) Accordingly, the trial court erred in denying summary adjudication of the first cause of action.

The foregoing analysis also applies to the third cause of action for breach of an involuntary bailment. Plaintiffs alleged that the property taken in connection with the warrant created an involuntary bailment imposing a duty on defendants to properly care for it, but that defendants breached this bailment by taking documents not listed in the warrant, damaging property, and interfering with plaintiffs' economic relationships with entities and individuals. As the allegations make clear, all of the offending conduct grew out of the search and seizure of plaintiffs' property under a warrant during the investigation in connection with a judicial proceeding. Furthermore, the alleged retention and destruction of property was causally related to the prosecution process, even though no charges were filed. (*Cappuccio, Inc. v. Harmon, supra*, 208 Cal.App.3d at pp. 1498–1500; *Gillan, supra*, 147 Cal.App.4th at p. 1048.) Given the immunities shielding defendants from liability (Gov. Code, §§ 821.6, 815.2, subd. (b), 820.2, 820.8), the trial court should have granted summary adjudication of the third cause of action.

4. *The trial court erred in denying summary adjudication of the second cause of action for violation of civil rights under section 1983.*

The second cause of action was alleged against Cooley in his capacity as district attorney acting under color of state law, and Doe defendants. Therein, plaintiffs alleged that the district attorney's policies, custom, procedures, and failure to adequately train staff permitted the same conduct alleged in the first cause of action, thereby violating plaintiffs civil rights protected by section 1983.

In moving for summary adjudication of this cause of action, all defendants asserted that plaintiffs' action is barred by sovereign immunity and prosecutorial

immunity, and the district attorney bore no supervisory liability. As an undisputed fact, all defendants averred that there was no allegation or evidence that the district attorney was present at the execution of the warrant, or that he participated in the search and seizure. As noted, no other defendants were named in this cause of action.

■ The main purpose of section 1983[11] is to provide for "compensation and deterrence 'for violations of federal rights committed by *persons* acting under color of state law.' [Citations.]" (*Pitts v. County of Kern* (1998) 17 Cal.4th 340, 348 [70 Cal.Rptr.2d 823, 949 P.2d 920], italics added (*Pitts*).)

According to the United States Supreme Court, cities, counties, and local officers sued in their official capacities are "persons" for purposes of section 1983. (*McMillian v. Monroe County* (1997) 520 U.S. 781, 784–785 [138 L.Ed.2d 1, 117 S.Ct. 1734]; *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, 690–692 [56 L.Ed.2d 611, 98 S.Ct. 2018]; see also *Pitts, supra,* 17 Cal.4th at pp. 340, 348.) While these entities may not be held vicariously liable under section 1983 for their subordinate officers' unlawful acts, they may be "held directly liable for constitutional violations carried out [pursuant to] their own regulations, policies, customs, or usages by persons having 'final policymaking authority' over the actions at issue. [Citations.]" (*Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 829 [11 Cal.Rptr.3d 692, 87 P.3d 1] (*Venegas*) [sheriff is state actor].)

However, "*states and state officers* sued in their official capacity are not considered persons under section 1983 and are immune from liability under the statute by virtue of the Eleventh Amendment and the doctrine of sovereign immunity. [Citations.] . . . '. . . States are protected by the Eleventh Amendment [of the United States Constitution] while municipalities are not . . . .' [Citation.] . . . 'Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. [Citation.] As such, it is no different from a suit against the State itself. [Citations.]' [Citation.]" (*Venegas, supra,* 32 Cal.4th at p. 829.) Thus, states and state officers enjoy absolute immunity under the Eleventh Amendment and are not subject to suit under section 1983 in either federal or state court. (32 Cal.4th at p. 829.)

■ While application of immunities to a cause of action under section 1983 in state court is a question of federal law (*Pitts, supra,* 17 Cal.4th at

---

[11] Section 1983 reads in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

p. 350), whether a district attorney is a policymaker for a county or an agent of the state is a matter of state law (*id.* at pp. 352–353). Our Supreme Court has established that district attorneys represent *the state* when they prepare to and prosecute crimes, train, and develop policies for prosecutorial staff in the area of criminal investigation and prosecution; they are not policymakers for the county. (*Pitts, supra,* at pp. 354, 362; see *Venegas, supra,* 32 Cal.4th at pp. 831, 833.) Accordingly, in California, the rule exempting the state and its officers from liability applies to district attorneys who act as state agents with final policymaking authority over the complained-of actions. (*Venegas, supra,* at p. 829, citing *McMillian v. Monroe County, supra,* 520 U.S. at pp. 784–785.)

Plaintiffs sued the district attorney in his official capacity as district attorney, which is simply another way of pleading the action against the State of California, of which the district attorney is an agent. (*Pitts, supra,* 17 Cal.4th at p. 350.) As such, the district attorney is not a person within the meaning of section 1983, and may not be found liable under that statute (*Pitts, supra,* at pp. 345, 366) by virtue of the Eleventh Amendment and the doctrine of sovereign immunity.

We are unpersuaded by plaintiffs' attempts to attribute the actions of the district attorney's office here as taken solely on behalf of the County's business and not in furtherance of the state's interests. The district attorney is an agent of the state when conducting an investigation, as here, into criminal conduct. As *Pitts* explained, the district attorney acts as an agent of the state (*Pitts, supra,* 17 Cal.4th at p. 359), and " 'the count[y] . . . cannot instruct the' district attorney how to investigate or prosecute crime . . . [citations] [and] '. . . has no direct control over how the [district attorney] fulfills his law enforcement duty . . . .' " (*Ibid.*) All the conduct complained of in the second cause of action pertained to the district attorney in his capacity as agent for the state for which he is immune under the Eleventh Amendment.

The trial court erred in denying the summary adjudication motion as to the district attorney. As no other defendants are named in the second cause of action for violation of section 1983, we need not reach the remaining grounds for its summary adjudication.

5. *The trial court erred in denying summary adjudication of the fourth cause of action to enjoin waste of taxpayer funds. (Code Civ. Proc., § 526a.)**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 218.

## DISPOSITION

The order to show cause is discharged. Let a peremptory writ of mandate issue directing the respondent superior court to vacate its order denying summary adjudication as to the first, second, third, and fourth causes of action in the second amended complaint and enter a new and different order granting summary adjudication on said causes of action. The stay is lifted. Petitioners to recover costs.

Klein, P. J., and Croskey, J., concurred.

On January 22, 2010, the opinion was modified to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied April 28, 2010, S180672.