Filed 4/25/23 Ewing v. County of Los Angeles CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CHRISTOPHER EWING, | B314722 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV46286) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge. Affirmed.

GA Law Group, George E. Akwo; Bitton & Associates and Ophir J. Bitton for Plaintiff and Appellant.

Collins + Collins, Tomas A. Guterres, Chandler A. Parker, James C. Jardin for Defendant and Respondent.

# INTRODUCTION

Appellant Christopher Ewing was convicted of robbery in 2004. The criminal court conducted a bench trial on the allegation that two prior convictions for aggravated robbery in Colorado qualified as serious or violent felonies under the meaning of the three strikes law. Finding that they did, the criminal court sentenced Ewing to 25 years to life in prison.

In 2019, this court granted Ewing's petition for habeas corpus, finding that Ewing's appellate counsel rendered ineffective assistance by failing to challenge the sufficiency of the evidence that the prior Colorado convictions qualified as serious felonies under California law. The matter was remanded for resentencing. Ewing was resentenced to five years, credited with time served, and released a few days later.

Ewing sued the County of Los Angeles and others, based on two alleged wrongs: first, that District Attorney's office employees failed to properly investigate the Colorado convictions to determine if they should count as strikes under California law, and second, that the Sheriff's Department employees responsible for the County jail failed to release Ewing in a timely manner after his resentencing.

Focusing on the first set of allegations only, the County filed a special motion to strike under the anti-SLAPP statute, Code of Civil Procedure section 425.16.[1] The County asserted that the work of prosecutors and other County employees involved in the criminal case constituted protected activity, and

---

[1] "SLAPP" stands for "strategic lawsuits against public participation." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 139.) All further section references are to the Code of Civil Procedure unless otherwise indicated.

Ewing's claims could not succeed due to the litigation privilege and governmental immunity. The superior court granted the motion, and Ewing appealed.

We affirm. All activity relating to a criminal prosecution constitutes protected activity under section 425.16, subdivision (e). In addition, Ewing cannot meet his burden to show a probability of success because the County employees' actions are privileged.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Conviction and habeas proceeding

As stated in the nonpublished opinion affirming Ewing's conviction, *People v. Ewing* (June 8, 2005, B175757), in March 2003 Ewing entered a pharmacy and gave the clerk a written demand for money; Ewing left with cash, prescription medication, and the clerk's watch and jewelry. Following a jury trial, Ewing was convicted of one count of robbery in violation of Penal Code section 211. Division Five of this District affirmed the conviction.

In 2019, Division Five of this District granted Ewing's petition for habeas corpus in the nonpublished opinion *In re Ewing* (Oct. 2, 2019, B297362). The proceedings relevant to Ewing's sentence were described as follows: "After a 2004 jury convicted petitioner Christopher Ewing of robbery (Pen. Code, § 211),[ ] the trial court conducted a bench trial on the People's allegation that he had suffered two prior convictions for serious or violent felonies within the meaning of sections 667, subdivisions (b) through (i) and 1170.12, subdivisions (a) through (d). During the bench trial, the People introduced certified documents from Colorado showing petitioner pled guilty to aggravated robbery (Colo. Rev. Stat. § 18-4-302) on March 25, 1987, in Arapahoe County and again on March 30, 1987, in

3

Adams County.  Petitioner, who represented himself at trial, argued the Colorado convictions did not qualify as serious or violent felonies under California law.  In particular, he argued robbery in California, unlike aggravated robbery in Colorado, requires intent to permanently deprive the owner of property.

"The trial court rejected petitioner's argument.  It inferred petitioner had the intent to permanently deprive the owners of property in the Colorado cases, based on a certified copy of the judgments of conviction.  In the Adams County case, the court ordered 'costs of $75.00/Victim Comp.'  In the Arapahoe County case, the court 'recommend[ed] restitution as a condition of parole amount is $2850.00.'  Based on the order of restitution, the trial court inferred petitioner intended to permanently deprive his victims of property.  Therefore, the trial court found petitioner had suffered two prior serious felony convictions, and sentenced him to 25 years to life in prison under the Three Strikes law.

"On appeal, petitioner was represented by appointed counsel, who did not challenge the sufficiency of the evidence in support of the trial court's finding that petitioner's prior Colorado robbery convictions qualified as serious felonies, even though petitioner specifically asked her to raise the issue.  This court affirmed the conviction and sentence on appeal, and the Supreme Court denied review.  (*People v. Ewing* (June 8, 2005, B175757) [nonpub. opin.], review denied, S135599.)  In the subsequent years, petitioner filed multiple (unsuccessful) habeas petitions arguing, among other things, that his prior Colorado convictions were not serious felonies under California law and that his appellate counsel was ineffective in failing to raise the argument.

"On December 1, 2017, petitioner filed yet another petition for writ of habeas corpus with the Supreme Court, again arguing

4

that his Colorado convictions did not qualify as strikes under California law because the Colorado crime does not contain all the elements of robbery in California.  Shortly thereafter, the Supreme Court decided [*People v. Gallardo* (2017) 4 Cal.5th 120 (*Gallardo*)].  *Gallardo* holds that, in determining whether a prior conviction constitutes a strike, a trial court may not make findings about the conduct that realistically led to the defendant's prior conviction.  (*Id*. at p. 124.)  Rather, it is limited to 'identify[ing] those facts that were already necessarily found by a prior jury in rendering a guilty verdict or admitted by the defendant in entering a guilty plea.' (*Ibid*.)

"On May 1, 2019, the Supreme Court issued an order to show cause returnable in this court as to 'why petitioner is not entitled to relief pursuant to [*Gallardo*] and why *Gallardo* should not apply retroactively on habeas corpus to final judgments of conviction, or in the alternative, why appellate counsel did not render ineffective assistance in failing to challenge on appeal the sufficiency of the evidence to support a finding that petitioner's prior Colorado robbery convictions qualified as serious felonies." (See *People v. McGee* (2006) 38 Cal.4th 682, 42 Cal.Rptr.3d 899, 133 P.3d 1054; *People v. Rodriguez* (1998) 17 Cal.4th 253, 261-262, 70 Cal.Rptr.2d 334, 949 P.2d 31.)'

"In accordance with the Supreme Court's instructions, we consider petitioner's arguments on their merits.  [Citation.]  We conclude appellate counsel rendered ineffective assistance when she failed to challenge the sufficiency of the evidence in support of the trial court's finding that petitioner's prior Colorado robbery convictions qualified as serious felonies under California law.  Because counsel was ineffective in failing to challenge the prior strike finding under law existing at the time of sentencing, we do

not reach the question of *Gallardo*'s retroactivity on habeas corpus to final judgments of conviction." (*In re Ewing, supra*, B297362.)

*In re Ewing* noted that when Ewing was sentenced in 2004, "the People were required to proffer sufficient evidence "'from which the court [could] reasonably presume that an element of the crime was adjudicated in the prior conviction. [Citations.]'" (*People v. Zangari* [(2001)]89 Cal.App.4th [1436,] 1440, 108 Cal.Rptr.2d 250.) In this case, the trial court concluded petitioner intended to permanently deprive his victims of property based on the judgments of conviction in the two Colorado cases. In one case, the court ordered 'costs of $75.00/Victim Comp.' In the other case, it 'recommend[ed] restitution as a condition of parole amount is $2850.00.'" (*In re Ewing, supra*, B297362.)

*In re Ewing* recognized that in Colorado "restitution" could encompass any pecuniary loss suffered by a victim: "Colorado courts have authorized restitution for $2,925 in lost wages, where a theft victim took six and one-half days off work to investigate the theft. (*People v. Henson* (2013) 307 P.3d 1135, 1138-1139.) The Colorado Court of Appeals has also approved restitution for an extortion victim's moving expenses, where the move was occasioned by defendant and his at-large accomplice's extortion threat. (*People v. Bryant* (2005) 122 P.3d 1026, 1027-1028.)" *In re Ewing* stated, "The judgments of conviction proffered by the People in this case do not indicate why petitioner was ordered to pay restitution. Because the documents do not identify the nature or source of the loss to be compensated, and because the People did not offer any other evidence in support of the prior strike allegations, the trial court could not reasonably assume the

6

amounts represented monies or property taken during the robberies themselves." (*In re Ewing, supra*, B297362.)

*In re Ewing* concluded, "As there was insufficient evidence to support the trial court's finding that petitioner's Colorado convictions qualified as prior strikes, an appellate challenge would have been successful. . . . Accordingly, we conclude counsel's failure to argue the insufficiency of the evidence in support of the sentencing court's prior strike findings "'fell below an objective standard of reasonableness'" and that but for counsel's error, petitioner would have obtained a more favorable outcome on appeal." The court granted Ewing's petition for writ of habeas corpus, and remanded the matter to the trial court "with directions to vacate its finding that petitioner had suffered two prior convictions for serious or violent felonies within the meaning of [the three strikes law] and resentence petitioner accordingly." (*In re Ewing, supra*, B297362.)

## B.     This proceeding

### 1.     *Complaint and FAC*

In December 2020, Ewing sued the County and others. The first amended complaint (FAC), filed on March 26, 2021, is the operative complaint for purposes of this appeal; we focus on the allegations therein.

Ewing sued the County, the Los Angeles County Sheriff, former District Attorney Steve Cooley, three individuals identified with the title "DDA," and the attorney who represented him in his direct appeal. Ewing identified "DDAs" as deputy district attorneys working under Cooley, and also as "employees at [the] District Attorney's office"; he did not identify the specific roles of the three named defendants identified as DDAs. Ewing's allegations focused on two discrete contentions: first, that the

7

District Attorney and related defendants failed to adequately investigate whether Ewing's out-of-state felony convictions should count as strikes under the three strikes law, and second, that the Sheriff and related defendants wrongfully delayed releasing Ewing, who had been ordered to be released but was nonetheless kept in jail for several additional days. We will call these two sets of allegations "the sentencing allegations" and "the jail allegations" respectively.

Regarding the sentencing allegations, Ewing alleged the County "and its DDAs owed a duty as prosecutors to properly investigate whether Ewing's [Colorado] convictions were portable as strikes into [California under the] Three Strikes Law before filing charges against Ewing in Court for the [California] robbery."[2] He asserted that the defendants did not do so, and "[t]his failure in investigation . . . breached [the defendants'] duties to the Court and to Ewing." Ewing alleged that deputy district attorneys relied on "the fruit of their shoddy investigation" to convince the trial court that the Colorado convictions constituted strikes. He further alleged that his appointed appellate attorney refused to challenge the factual basis for the strikes, "even though Ewing specifically asked, pleaded and begged her to raise the issue." Ewing alleged, "Without the two [Colorado] priors being allowed, Ewing would only have had to serve a total of perhaps 2 to 2.5 years in prison," rather than the 16.8 years he actually served.

Regarding the jail allegations, Ewing alleged that in December 2019 he was transferred from state prison to the

---

[2] Throughout the record and briefing, Ewing set out certain party names in all capital letters. For readability, we have eliminated this use of capitalization in quotations.

8

custody of the Sheriff's Department so he could attend his resentencing hearing. Ewing alleged that on December 9, 2019, he was resentenced, credited with time served, and placed on parole. Ewing alleged he was then transferred back to jail, and rather than being processed and released, he was held for an additional five days. Ewing alleged he had to resort to the assistance of the Innocence Project before the Sheriff's Department finally agreed to release him on December 13, 2019.

Ewing alleged 11 causes of action against the various defendants: (1) violation of civil rights under the California Constitution against all defendants; (2) liability under 42 U.S.C. section 1983 (section 1983) against sheriff's deputy defendants; (3) liability under section 1983 pursuant to *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658 (*Monell*)[3] against the County; (4) false imprisonment against all defendants except appellate counsel, relating to the delay in Ewing's release; (5) breach of duty to release Ewing against the County and the State; (6) false imprisonment based on an illegal sentence against all defendants except appellate counsel; (7) negligent handling of a legal matter against appellate counsel; (8) intentional infliction of emotional distress against all individual defendants; (9) negligence against all defendants; and (10) declaratory and injunctive relief against the County and the State; and (11) unfair business practices under Business and Professions Code

---

[3] *Monell* holds that a municipal or county entity cannot be held liable under section 1983 on a respondeat superior theory. (*Monell, supra*, 436 U.S. at p. 691.) However, "[l]ocal governing bodies . . . can be sued directly under § 1983 [where] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." (*Id*. at p. 690.)

section 17200 against appellate counsel. Ewing prayed for general damages, special damages, punitive damages, attorney fees, penalties, costs, and other relief.

    2.    *Anti-SLAPP motion*

The County filed a special motion to strike the causes of action for (1) violation of civil rights; (3) *Monell* liability under section 1983; (6) false imprisonment based on an illegal sentence; (9) negligence; and (10) declaratory and injunctive relief. (§ 425.16.) The County stated that it was challenging each cause of action based on the sentencing allegations, which attributed wrongdoing to the prosecutors who handled Ewing's criminal case.[4] The County asserted that the challenged causes of action "'arise from' the conduct of district attorneys in connection with a judicial proceeding. The County prosecutors were necessarily engaged in protected speech activity when advocating on behalf of the State during [Ewing's] criminal prosecution." The County noted that Ewing claimed his excessive sentence was "caused by the failure of the County and its Deputy District Attorneys to properly investigate the facts and law relating to his prior felony convictions in Colorado," "the Deputy District Attorney's conduct

---

[4] The County included the second cause of action in its motion, and the superior court granted the motion as to the second cause of action, even though this cause of action was based only on the jail allegations and was asserted against Sheriff's Department defendants. We asked the parties for supplemental briefing discussing how this court should address the superior court's ruling as to the second cause of action. The County and Ewing agreed that the County's special motion to strike did not address the jail allegations, so the court's inclusion of this cause of action in its order was erroneous and did not dispose of the second cause of action.

of introducing certified documents from Colorado into evidence" during Ewing's sentencing, and the attorney "otherwise advocating that the prior convictions qualify" as strikes under the three strikes law.

The County asserted that Ewing's claims therefore arose from protected activity under section 425.16, subdivision (e). That subdivision states that protected activity includes (1) written or oral statements made before a judicial proceeding, (2) written or oral statements made in connection with an issue under consideration or review by a judicial body, or any other official proceeding authorized by law, (3) written or oral statements made in a public forum in connection with an issue of public interest. (§ 425.16, subd. (e).)

The County further contended that Ewing could not demonstrate a probability of success on his claims. It argued that the deputy district attorneys' and County's actions were immune from liability by statute. (See Govt. Code, §§ 821.6 ["A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."], 815.2, subd. (b) ["a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability"].) The County also argued that all communication relating to the judicial proceeding was privileged under the litigation privilege in Civil Code section 47. Furthermore, the County asserted that prosecutors are entitled to absolute immunity under federal common law.

11

### 3. *Opposition*

Ewing filed a motion seeking "limited discovery on [the County's] investigation of the facts and the applicability of [the] Colorado felonies, and "limited discovery into the reasonableness of [the County's] actions/inactions to secure [Ewing's] release" following the resentencing. Ewing asserted that the discovery was necessary to oppose the County's motion. The hearing on Ewing's discovery motion was set for October 4, 2021, and the hearing on the special motion to strike was set for June 17, 2021, so Ewing filed an ex parte application seeking to continue the hearing on the special motion to strike until after the discovery motion was heard. The County opposed the ex parte application, and the superior court denied it.

In his opposition to the special motion to strike, Ewing asserted, in a single sentence argument, that his claims did not arise out of protected activity because his claims were "not about [County] employees' communicative and advocacy conduct inside the courtroom during Ewing's prosecution, but [the County's] out of court investigation as to whether the [Colorado] felonies were factually importable" as strikes under California law.

Ewing also argued that his claims had a probability of success because according to federal law, "absolute immunity may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." (*Van de Kamp v. Goldstein* (2009) 555 U.S. 335, 342, quoting *Imbler v. Pachtman* (1976) 424 U.S. 409, 431 fn. 33.) Ewing further contended that immunity under Government Code 821.6 applies only to malicious prosecution claims, which he had not alleged. He also asserted that prosecutorial immunity did not extend to claims under section

12

1983 and *Monell*. The County filed a reply in support of its motion.

    4.    *Hearing and ruling*

At the hearing on the motion, counsel for the County submitted on the papers. Counsel for Ewing argued briefly that "there is a distinction between the adversarial role of a prosecutor and the investigator role and that different immunities lie." The court took the matter under submission.

The superior court granted the motion in a short written ruling. It stated, "The actions taken by the County – as alleged – are protected activities which are subject to an anti-SLAPP motion. Defendants meet their [*sic*] burden. Burden shifts to the plaintiff." The court continued, "Plaintiff's ability to demonstrate probability of prevailing is limited by the litigation privilege. Civil Code 47(b) – no liability can result from communications made in judicial or quasi-judicial proceedings by litigants or participants authorized by law to achieve the objects of the litigation; and that have some connection or logical relation to the action. SILBERG V ANDERSON (1990) 50 Cal.3d 205, 212. [¶] IMBLER V PACHTMAN (1976) 424 U.S. 409, 430. A prosecutor's functions that are protected by absolute immunity include initiating a prosecution and presenting the State's case."

Ewing timely appealed.

## DISCUSSION

## A.    Anti-SLAPP and standard of review

"A cause of action arising from a person's act in furtherance of the 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there

is a probability' that the claim will prevail." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788, citing § 425.16, subd. (b)(1).) Section 425.16, subdivision (e) describes four categories of acts "in furtherance of a person's right of petition or free speech": "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) "If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" (*Ibid.*)

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. [Citations.] In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based. [Citations.] We do not,

14

however, weigh the evidence, but accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Park, supra*, 2 Cal.5th at p. 1067.) The appellant bears the burden of affirmatively demonstrating error. (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671.)

**B.    First step: protected activity**

    1.    *Legal standards*

In the first step under the anti-SLAPP analysis, the court determines whether the plaintiff's claims arise from protected activity. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.) At this stage, the "defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Ibid*.) "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra*, 2 Cal.5th at p. 1062.) "[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Id*. at p. 1063.) Thus, "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Id*. at p. 1060.)

    2.    *Analysis*

It is well established that communications in preparation for and during a court proceeding, such as a criminal prosecution, are protected activity under section 425.16. "[P]lainly read, section 425.16 encompasses any cause of action against a person arising from any statement or writing made in, or in connection

with an issue under consideration or review by, an official proceeding or body." (*Briggs v. Eden Council for Hope and Opportunity* (1999) 19 Cal.4th 1106, 1113 (*Briggs*); see also *Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 409 ["'all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute'"].)

Ewing asserts that because investigation into the Colorado felonies may have been conducted by non-prosecutors and/or was conducted outside the courtroom, these actions do not constitute protected activity under section 425.16, subdivision (e). The case law does not support this position. "'[J]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . such statements are equally entitled to the benefits of section 425.16.'" (*Briggs, supra*, 19 Cal.4th at p. 1115, quoting *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784; see also *Hansen v. California Dept. of Corrections and Rehabilitation* (2008) 171 Cal.App.4th 1537, 1544 ["communications preparatory to or in anticipation of the bringing of an official proceeding are within the protection of section 425.16"]; *Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1477 [statements to prosecutors in preparation for trial are protected as statements "made in connection with an issue under consideration or review by a legislative, executive, or judicial body" under section 425.16, subdivision (e)(2)]; *Dickens v. Provident Life & Accidents Ins. Co.* (2004) 117 Cal.App.4th 705, 714 ["contact with the executive branch of government and its

investigators about a potential violation of law" constitutes protected activity under section 425.16]; *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1570 ["Communications that are preparatory to or in anticipation of commencing official proceedings come within the protection of the anti-SLAPP statute"].)

Ewing argues that if we hold that the County's actions relating to the Colorado convictions constitute protected activity under section 425.16, it "will be tantamount to this Court saying that any conduct by [the County] in investigating and prosecuting a crime would be 'protected activity' no matter what." However, aside from a few narrow exceptions not relevant here,[5] that is indeed the gist of the well-established law.

Ewing compares this case to *Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745 (*Laker*) to support his argument that an *investigation*—as opposed to statements in court—is not necessarily protected activity. The comparison is not apt. In *Laker*, a professor, Laker, sued the defendant university and others alleging retaliation and defamation based in part on an internal investigation regarding another professor, Aptekar. The university filed a special motion to strike, which the trial court denied. The Court of Appeal partially reversed. It noted that "internal investigations by schools into claims of discrimination qualify as 'official proceedings authorized by law' that receive the protections of the anti-SLAPP statute." (*Laker, supra*, 32 Cal.App.5th at p. 765.) Turning to whether Laker's claims "arose from" protected

---

[5] For example, filing a *false* police report does not constitute protected activity under section 425.16. (See *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 703.)

activity, the court stated, "Here, we have little difficulty in finding that the speech alleged in the defamation claim—the statements . . . made to investigators during the internal investigation—are not merely 'evidence' of the claim but rather form the basis of Laker's defamation claims." (*Id.* at p. 767.)

Regarding Laker's retaliation claim, however, the Court of Appeal reached a different conclusion. The court noted, "According to the allegations in his complaint, the University subjected Laker to the burden of three meritless investigations and denied him access to the president of the University. While Laker will no doubt need to use speech by University employees as evidence to support his claims, the speech is not—by itself—the basis of the claim." (*Laker, supra*, 32 Cal.App.5th at p. 773.) The court emphasized again later in the opinion, "Laker's retaliation cause of action is premised on his allegation that the University's decision to pursue three 'meritless' investigations of Laker was itself conduct in retaliation for actions Laker had previously taken in the Aptekar investigation. According to Laker, the University's investigations into his own conduct was (*sic*) not a good-faith investigation into employee wrongdoing but itself constituted a retaliatory action." (*Id.* at p. 776.) Because Laker's cause of action was based on the university's decision to use an investigation as a retaliatory instrument—rather than on communication involved in the investigation itself—the *Laker* court held that this cause of action did not arise from protected activity. (*Id.* at p. 777.)

Ewing argues that as in *Laker*, "the decision to investigate rather than statements made during the investigation form the gravamen" of the claims here. We disagree with this representation of his allegations. Ewing did not allege he was

18

harmed by a bad-faith *decision* to investigate his Colorado convictions, as was the claim in *Laker*. To the contrary, the FAC alleges the investigation itself was "inadequate" because the County "failed to procure the full and complete records" of the Colorado cases which were "necessary and required for a decision to be made as to whether the [Colorado] convictions should count as felony strikes in California." Ewing alleges he was harmed because the prosecutors conveyed the results of the allegedly shoddy investigation to the criminal court in charging documents and during the sentencing hearing, which is unquestionably protected activity. Ewing also cites no authority suggesting that *any* aspect of investigations relating to crime, sentencing, or other litigation falls outside the scope of protected activity under section 425.16.

Thus, Ewing's claim arises from the protected activity inherent in preparing a criminal complaint, preparing for the sentencing hearing, and presenting information during criminal proceedings, all of which constitute protected activity under section 425.16, subdivision (e).[6]

## C. Second step: minimal merit

### 1. *Legal standards*

After a moving defendant carries its burden to show that the plaintiff's claims arise from protected activity, the plaintiff "must then demonstrate its claims have at least 'minimal merit.'"

---

[6] Ewing, apparently misunderstanding the scope of the County's motion and the scope of this appeal, recites his allegations about his delayed release and argues that the deputies' "retaliatory harassment" is not protected activity under § 425.16. Because the jail allegations were not the target of the special motion to strike or the superior court's ruling, we do not address these contentions.

19

(*Park, supra*, 2 Cal.5th at p. 1061.)  Thus, the court "must determine whether plaintiff has demonstrated a probability of prevailing on the merits.  To do so, plaintiff must state and substantiate a legally sufficient claim." (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 211.)

Ewing asserts the superior court erred in finding the County's actions privileged.  He contends that "neither [the County] nor the Trial Court showed how the investigation itself (not statements made during the investigation), were [privileged as] statements made [in] an official proceeding."

Ewing misunderstands the applicable burden. A cause of action arising from protected activity will be stricken unless "*the plaintiff* has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1), emphasis added.)  "If *the plaintiff* fails to meet that burden, the court will strike the claim." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884, emphasis added.)  Here, neither the court nor the County had the burden to show that Ewing's claims had a probability of prevailing.[7]  We discuss the applicable privileges below.

---

[7]    As our colleagues in Division Seven have recognized, "[t]here is some dispute in the case law as to which party bears the burden of proof on an affirmative defense in the context of an anti-SLAPP motion." (*Dickinson v. Crosby* (2017) 17 Cal.App.5th 655, 683.)  "Some cases state that 'although section 425.16 places on the plaintiff the burden of substantiating its claims, a defendant that advances an affirmative defense to such claims properly bears the burden of proof on the defense.'" (*Ibid.*)  Others suggest that an affirmative defense is "'a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing.'" (*Ibid.*)  Here, although the County relies on

2.      *Litigation privilege under Civil Code section 47*

The superior court held that the County's actions were protected by litigation privilege under Civil Code, section 47. "A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes the defendant's liability on the claim." (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 814.) Ewing asserts that "the investigation itself . . . is not communicative as litigation privilege case law requires." He interprets the litigation privilege too narrowly.

The litigation privilege under Civil Code, section 47 "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) The privilege "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." (*Ibid*.) "In its application to communications made in a 'judicial proceeding,' section 47(b) is not limited to statements made in a

affirmative defenses, we need not address this issue. On the record here, the county's affirmative defenses of litigation privilege, privilege under sections of the Government Code, and immunity from suit under *Monell* and section 1983 all mean that Ewing's claims have no probability of prevailing, regardless of how the burden of proof is assigned. (See *ibid*. ["[w]hat is important is that, regardless of the burden of proof, the court must determine whether the plaintiff can establish a prima facie case of prevailing, or whether the defendant has defeated the plaintiff's evidence as a matter of law"].)

21

courtroom. Many cases have explained that section 47(b) encompasses not only testimony in court and statements made in pleadings, but also statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit." (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 361.) Moreover, "'the privilege protect[s] communications to or from governmental officials which may precede the initiation of formal proceedings.'" (*Id.* at p. 362.) Thus, we are unpersuaded by Ewing's attempt to separate the County's alleged preparation of charging documents and statements made at the sentencing hearing from the investigation inherent in the preparation for those events. All such activities are privileged under Civil Code, section 47.

  3. *Privilege under the Government Code*

  Ewing also contends privilege under various Government Code sections does not apply. However, in his opening brief he makes this argument only in relation to his jail allegations against the deputies. Those claims were not addressed in the County's special motion to strike. To the extent Ewing contends that privilege under the Government Code does not apply to the County in relation to the sentencing allegations, he has forfeited any such argument. (See, e.g.*, Safeway Wage & Hour Cases* (2019) 43 Cal.App.5th 665, 687 fn. 9 [failure to raise argument in opening brief constitutes forfeiture].)

  Nevertheless, we note briefly that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." (Gov. Code, § 821.6.) Moreover, "[a]cts taken during an investigation prior to the institution of a judicial proceeding are .

22

. . protected by section 821.6 because investigations are an essential step toward the institution of formal proceedings." (*County of Los Angeles v. Superior Court* (2009) 181 Cal.App.4th 218, 229; see also *Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205, 1209-1210.)  The County is shielded from liability as well:  "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."  (Gov. Code, § 815.2, subd. (b).)

4.	*Immunity under section 1983 and* Monell

Ewing also argues that specifically in the context of section 1983, "prosecutorial immunity does not apply to all prosecutorial conduct."  Ewing suggests—but does not actually assert—that California statutory privileges do not apply to section 1983 claims.  (See, e.g., *Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1485 ["The United States Supreme Court has repeatedly held that 'a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted"].)  The County's respondent's brief fails to address immunity for section 1983 claims, immunity under the federal cases Ewing cites,[8] or immunity relevant to Ewing's *Monell* claim.

We therefore asked the parties for supplemental briefing.  Because Ewing's *Monell* claim included the County as the sole defendant, and was based on alleged policies and practices of the District Attorney, we specifically asked the parties to address case law holding that a district attorney acting in his or her official capacity is an agent of the state (not a county) for

---

[8]	The County instead asserts that "common law prosecutorial immunity" applies, relying almost entirely on California case law and ignoring all but one of the federal cases Ewing cites.

purposes of section 1983 (see *Pitts v. County of Kern* (1998) 17 Cal.4th 340, 362, 366), and state officers sued in their official capacity are not considered persons who may be liable under section 1983 (see *County of Los Angeles v. Superior Court* (2009) 181 Cal.App.4th 218, 233.)

In his supplemental brief, Ewing conceded the County is immune from liability in this context under section 1983. He nevertheless argued that someone other than the prosecutors may have conducted the allegedly inadequate investigations, and those persons may be liable. However, Ewing has not alleged this cause of action against any individual defendants, nor could he—*Monell* liability is based on governmental policy, not the actions of individuals. (See, e.g., *Arista v. County of Riverside* (2018) 29 Cal.App.5th 1051, 1064 [To establish *Monell* liability, a plaintiff must identify the challenged policy, practice, or custom; attribute it to the governmental body itself; and show a causal link between the execution of the policy, practice, or custom, and the injury suffered].) Because the *Monell* claim was asserted against the County alone, and Ewing concedes the County cannot be liable under section 1983 under the circumstances here, Ewing has failed to demonstrate that his *Monell* cause of action has minimal merit.

Ewing's claims arise from protected activity, and he has not demonstrated a probability of prevailing on the merits. The superior court therefore did not err in granting the County's special motion to strike.

## DISPOSITION

The court's order is affirmed.  The County is entitled to its costs on appeal.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

COLLINS, J.

We concur:

CURREY, ACTING, P.J.

DAUM, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.